No. 95-050

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

IDA O. BUSTA, as Personal Representative
of the Estate of Delbert F. Busta, on
behalf of the heirs of Delbert F. Busta,

Plaintiff and Respondent,

v.

COLUMBUS HOSPITAL CORPORATION,

Defendant and Appellant.

FILED

MAY 10 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Eighth Judicial District,
                In and for the County of Cascade,
                The Honorable Thomas M. McKittrick, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

        James R. Walsh and Dennis P. Clarke, Smith,
        Walsh, Clarke & Gregoire, Great Falls, Montana

        For Respondent:

        Dennis Patrick Conner, Attorney at Law,
        Great Falls, Montana


                    Submitted on Briefs:  January 17, 1996

                             Decided:  May 10, 1996

Filed:


                    Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

The plaintiff, Ida O. Busta, filed her complaint in the District Court for the Eighth Judicial District in Cascade County in which she sought compensation for damages to Delbert F. Busta pursuant to § 27-1-501, MCA, and to his heirs pursuant to § 27-1-513, MCA, based on her allegation that Delbert's death was caused by the negligence of the defendant, Columbus Hospital Corporation. Following trial of the issues raised by the parties' pleadings, a Cascade County jury returned its verdict in which it found that Delbert's injuries and death were caused by the negligence of Columbus and the contributory negligence of Delbert and apportioned seventy percent of fault to the Hospital and thirty percent of fault to Delbert. The jury found that Delbert and his estate were damaged in the amount of $5,000 and that his heirs were damaged in the amount of $800,000 as a result of his death. Based on the jury's apportionment of liability, the District Court entered judgment in favor of Delbert's estate in the amount of $3,500 and in favor of his heirs in the amount of $560,000. Columbus appeals from the judgment of the District Court, from the order of the District Court denying its motion for a new trial, and from the District Court's denial of its motion for offset against the judgment pursuant to § 27-1-308, MCA. We affirm the judgment and orders of the District Court.

The issues raised by Columbus on appeal are as follows:

1. Did the District Court err when it admitted a photographic exhibit offered by the plaintiff which depicted the decedent, Delbert Busta, and included a tribute from his granddaughter?

2. Did the District Court err when it refused to admit the defendant's proposed exhibit which consisted of a letter written by the plaintiff's attorney to the Veterans' Administration which attributed Delbert Busta's death to a military-related mental illness?

3. Did the District Court err when it refused to give the defendant's proposed instructions which defined proximate cause and stated the requirement that the decedent's injuries be foreseeable before causation could be established?

4. Did the District Court err when it refused to offset benefits received by Ida Busta from the Veterans' Administration against the damages awarded for the decedent's wrongful death?

DISCUSSION

Delbert Busta was an American veteran who had been captured by the Japanese Army, forced to participate in the Bataan Death March, and was subsequently imprisoned in a Japanese prisoner of war camp for over three years.

Subsequent to his release as a prisoner of war and his return to the United States, he was treated for his mental and physical debilitation and discharged from the Army. At the time of his discharge, he was diagnosed with simple schizophrenia, and on that

basis was awarded a service-related disability by the Veterans' Administration. Testimony given at this trial explained that at that time the diagnosis of simple schizophrenia was ascribed to someone who had become withdrawn and uninterested in social interaction. It did not indicate the kind of bizarre behavior or delusions that are commonly associated with other forms of schizophrenia. At any rate, the undisputed testimony was that from then until the date of his death on December 1, 1991, Delbert displayed no outward indication of mental or emotional problems and that not even his wife and children were aware of the basis for his service-related disability benefits.

On November 26, 1991, Delbert was admitted to the Columbus Hospital in Great Falls for surgical treatment of prostate cancer and inguinal hernia repair. Surgery was performed on that date.

Following successful surgery, Delbert was transferred to a room on what was designated the third floor of the hospital, although the floor was actually four stories above ground level as viewed from the outside. During the early morning hours of December 1, Delbert cut himself free from his Foley catheter, pulled out the tubings from his IVs, tied two sheets and a hospital gown together, attached one end of the makeshift rope to a clothing hook, and attempted to leave the hospital through his third floor window. He was found on the ground below his window a short time later suffering from injuries caused by his fall. He died from those injuries later that day.

4

Kathy Fitzgerald was the nurse who was employed by and on duty at Columbus Hospital on the evening of November 30 and the morning of December 1, and who was assigned to care for Delbert. She testified that he was normally a cooperative patient, but that on her last visit with him on the evening of November 30 he had refused to take his medication, refused to be repositioned, requested that the sequential compression devices be removed from his legs, and asked to be left alone. She also noted that at the time Delbert's blood pressure was elevated and his pulse rate was abnormally rapid. He was experiencing a condition known as tachycardia. However, Fitzgerald did not report Delbert's change in attitude or his constellation of symptoms to his treating physician, and after observing at midnight that he appeared to be asleep, she did not check his blood pressure or pulse again.

At the time, Delbert was being treated with ten regular medications and three medications which were administered "as needed."

Delbert attempted to leave the hospital through the three foot by four foot opening in his third floor window at approximately 2:15 a.m. on December 1.

Peter Horst, M.D., was the surgeon who admitted Delbert to the hospital and performed prostate cancer surgery on November 26. He acknowledged that confusion, psychosis, and anxiety are listed side effects for several of the medications which were being administered. He admitted that given the constellation of findings

5

reported in Fitzgerald's notes, Delbert's condition should have been medically assessed on November 30, and that had he been advised of those findings, he would have performed various tests to see whether Delbert's oxygenation was adequate and his electrolytes were normal. He would also have tried to determine whether Delbert was rational or irrational. However, he was not notified.

Ida's complaint was filed on October 7, 1993. In her complaint she alleged that as a result of mind-altering medication following his surgery, Delbert suffered from delirium, confusion, and disorientation; that he was inadequately supervised and cared for at the hospital; and that the hospital failed to maintain its facilities in a safe condition. She alleged that the hospital's omissions were negligent and that its negligence was the cause of her husband's injuries and death.

In response, the hospital denied that it was negligent and alleged that any claim by Ida was barred by Delbert's own contributory fault, the contributory fault of unspecified third parties, and her own failure to advise the hospital of Delbert's preexisting mental condition. In its pretrial contentions, the hospital specifically alleged that Delbert's death was caused by his preexisting mental illness.

At trial, plaintiff called as a witness Richard Rada, M.D., who had extensive experience as a psychiatrist and hospital administrator. He had been asked to review Delbert's medical records in an effort to determine what caused him to leave the

6

hospital through the window on the night of his death. He reviewed Delbert's Veterans' Administration records, as well as his records from the Great Falls Clinic where he had been treated over the years and his records from Columbus Hospital. He formed the opinion that at the time Delbert attempted to leave the hospital he was suffering from delirium or an acute confusional state caused by the fact that his brain was receiving inadequate oxygen and possibly contributed to by the numerous medications which were being administered. He explained that delirium is a common side effect in hospitals and is experienced by about fifteen percent of all patients. It leads to altered behavior, including panic, fear, hallucination, delusions, and aggressive behavior.

Dr. Rada explained that by definition, simple schizophrenia is not characterized by hallucination or delusions. He therefore ruled out any preexisting mental illness as a cause of Delbert's behavior on the night of his death.

Dr. Rada expressed the opinion that Fitzgerald was negligent by failing to adequately monitor Delbert on the night before his death and by failing to report his constellation of signs and symptoms to his treating physician. He also expressed the opinion that the hospital was negligent by providing a window on a third floor patient's room that could be opened to the extent that a patient could either intentionally or inadvertently fall from the window.

7

His opinion regarding the standard of care for Fitzgerald was corroborated by Wendy Haack, a clinical nurse specialist from Portland, Oregon, who had been a Montana college instructor on the subject of critical care nursing and physical assessment. Dr. Rada's opinion regarding the inadequacy of the window design at the hospital was corroborated by J. Armand Burgun, a New York architect who specializes in hospital design.

It was Dr. Rada's opinion that Delbert's death could have been prevented by proper care and proper window design.

Horatio Bales, M.D., who is a staff physician at the Veterans' Administration Hospital at Fort Harrison, also testified. He explained that he had performed surgical hernia repair on Delbert in September 1991 and that during the time that he treated him at the VA hospital he observed no signs of mental or emotional problems. In fact, he found Delbert's demeanor very pleasant and testified that he did not appear to be suffering from any form of schizophrenia.

Other than doctors Horst, Rada, and Bales, no other medical testimony was offered. Specifically, there was no qualified medical opinion testimony to the effect that any preexisting mental condition contributed to or caused Delbert Busta to leave his room through the third floor window on December 1, 1991.

William J. Downer, Jr., was the President and Chief Executive of Columbus Hospital on the date of Delbert's fall and death. He testified that Columbus is accredited as a hospital by the Joint

8

Commission for the Accreditation of Health Care Organizations and that in order to maintain its accreditation, teams of investigators periodically visit the hospital to inspect its facilities and evaluate its services. The Commission's last inspection prior to Delbert's death occurred on approximately July 18, 1991. The inspection team consisted of an administrator, a doctor, and a nurse.

During his meeting with the inspection team following that visit, Downer was told "to restrict the opening of your patient room windows, so that patients cannot inadvertently fall or jump from the windows." That meeting was followed by a written report from the Commission which was received by the hospital on September 26, 1991, and was offered as an exhibit at the time of trial. The written report noted that high priority should be given to the problem that room windows lacked stops which would prevent a patient from falling or jumping from the window. The Commission recommended that high priority attention be given to the problem. However, nothing was done about the recommendation from the time it was made until Delbert died.

Downer admitted that if the hospital had considered window stops a priority, as the Commission did, it would have been feasible to put them in. In fact, the cost for doing so would have been about fifty cents per window, plus labor.

9

At the time of his fall from his third floor room, Delbert's window could be opened to a width of three feet and a height of four feet.

J. Armand Burgun is an architect who specializes in hospital design. He is the past president of the American Association for Hospital Planning and has chaired the Design and Construction Committee for the American Hospital Association. He has authored several books and articles on hospital design, hospital safety, and fire safety. He was consulted by the plaintiff regarding the design of the windows at Columbus Hospital and his testimony was offered at the time of trial. It was his opinion that as it existed at the time of Delbert's death, the window design was unsafe and did not meet code requirements. He testified that one way to have made the windows safer was to put stops on the windows which prevented them from being opened far enough for a person to pass through the opening and that it would have been exceedingly easy for the hospital to do so. He testified that the type of incident which caused Delbert's death was foreseeable and well known within the hospital care industry by 1991 at the time that Delbert fell. He also testified that if the windows had been properly designed, the fall and injuries could not have occurred.

The only other expert testimony offered regarding the adequacy of the hospital's windows was provided by John Rigdon, an architect from Bellevue, Washington, who also specializes in designing health care facilities. His firm had designed a rehabilitation unit that

was added to the hospital in 1989. He was listed by the hospital as an expert witness. However, it was the plaintiff who took his deposition and offered his testimony over the defendant's objection.

He admitted that based on current standards the window through which Delbert attempted to escape was unsafe and that the windows in the rehab unit which his firm designed would not have permitted a person to accidentally or intentionally pass through the window. He testified that escape or suicide in a hospital is a known and foreseeable consequence, and that although he had participated in the design of 50 to 100 patient room window systems for hospitals, he had never personally used one like the one used in Delbert's room.

Rigdon testified that he normally designed windows with vents that could be activated by a special tool kept at the nurses' station, but that in those designs which allowed a patient to open a window by himself, the window could not be opened more than about three inches. He testified that by 1987 the knowledge of suicide and escape risk was incorporated into the formal guidelines for hospital design, but that he had been using restricted access windows for patient rooms during his entire thirty years of architectural practice. It was his opinion that that is what a reasonable architect would do when designing a third floor post-surgical hospital patient room window.

11

Columbus Hospital offered testimony from Debra Gaspar, a registered nurse from Billings, who testified that based on her review of the records, Fitzgerald had complied with the standard of care applicable to post-surgical nurses at the time and date in question. However, the hospital offered no expert opinion regarding the reason that Delbert attempted to leave the hospital through the third floor window, nor did it offer expert testimony to the effect that the incident which caused Delbert's injuries and death was unforeseeable from the perspective of a hospital administrator or a hospital architect.

The jury's verdict and the court's orders were as previously stated. With this background, we will discuss the issues raised by the hospital on appeal.

ISSUE 1

Did the District Court err when it admitted a photographic exhibit offered by the plaintiff which depicted the decedent, Delbert Busta, and included a tribute from his granddaughter?

During the testimony of Charles Busta, Delbert's son, a photograph of Delbert was offered as an exhibit. Attached to the photograph was a poetic tribute to Delbert by his granddaughter. The poem had apparently been submitted as part of a school project because next to it was a grade and a handwritten note which stated: "I can tell your Grandpa was very special to you!" At the time the photo was offered, the attorney for the hospital objected to its admission on the basis that "it was written by a person who is not

an interested party to this lawsuit." When the attorney for the plaintiff offered to call the person who had written the poem, the hospital's attorney stated: "I'll stipulate that she wrote it. You won't have to call her. That's not my objection."

The photograph was then admitted without further objection and viewed by the jury.

William Busta, Delbert's other son, and one of the heirs for whom wrongful death damages were being sought, later testified that one of the reasons his father's loss was significant to him was because of the contributions that his father made to his own family and that his daughter's poem had tried to capture what his father meant to the entire family.

We review a district court's evidentiary rulings to determine whether there has been an abuse of discretion. *In re Seizure of $23,691.00* (Mont. 1995), 52 St. Rep. 1063, 1065, 905 P.2d 148, 152 (citing *State v. Passama* (1993), 261 Mont. 338, 341, 863 P.2d 378, 380). The district court has broad discretion to determine if evidence is admissible. Accordingly, absent an abuse of discretion, this Court will not overturn the district court's determination. *In re $23,691.00*, 52 St. Rep. at 1065, 905 P.2d at 152.

Furthermore, we will not reverse a district court's admission of evidence for reasons which have not been clearly set forth by objection at the time of trial. Rule 103(a)(1), M.R.Evid., provides that:

13

(a) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
(1) Objection. In case the ruling is one admitting evidence, a timely objection or a motion to strike appears on the record, <u>stating the specific ground of the objection</u>, if the specific ground was not apparent from the context.

(Emphasis added.)

As we stated in *Scofield v. Estate of Wood* (1984), 211 Mont. 59, 63, 683 P.2d 1300, 1302, "[a]n objection raised for the first time on appeal is not timely. Unless a timely objection to evidence or testimony is raised at the trial level, it cannot be considered on appeal." (Citations omitted.)

On appeal, the hospital contends that the photograph of Delbert should have been excluded for the reason that it included hearsay in violation of Rule 801, M.R.Evid.; for the reason that it was irrelevant pursuant to Rule 401, M.R.Evid.; and for the reason that it was unduly prejudicial in violation of Rule 403, M.R.Evid.

However, the hospital's hearsay objection was not stated at the time that the exhibit was offered and was specifically waived when the plaintiff's attorney offered to call the author and the defendant's attorney stated that it would be unnecessary. Undue prejudice in violation of Rule 403 was also specifically waived because it was not stated as a basis of the defendant's objection at the time the exhibit was offered.

Although irrelevance was not specifically stated as a basis for the defendant's objection to the plaintiff's photographic

14

exhibit, we will construe its objection to the effect that the author of the message on the exhibit was not a party to mean that the exhibit was therefore irrelevant. However, even by liberally interpreting the hospital's objection, we are unable to conclude that the District Court abused its discretion by admission of the exhibit.

The jury was instructed, without objection, that the award to Delbert's heirs should include the value of his companionship and reasonable compensation for their grief, sorrow, and mental anguish resulting from his death. William Busta testified that a good deal of his grief and sorrow which resulted from the loss of his father was because of the impact that it had on William's own children to whom Delbert had been an exemplary grandparent. His daughter's tribute to Delbert was probative of that relationship. Therefore, we conclude that it was not irrelevant and that the District Court did not abuse its discretion by admitting the plaintiff's photographic depiction of Delbert, which included his granddaughter's tribute.

## ISSUE 2

Did the District Court err when it refused to admit the defendant's proposed exhibit which consisted of a letter written by the plaintiff's attorney to the Veterans' Administration which attributed Delbert Busta's death to a military-related mental illness?

15

During his life following his discharge from military service, Delbert received a small pension due to his diagnosis of simple schizophrenia. The jury was fully informed of that fact.

Subsequent to Delbert's death, his surviving spouse Ida, after learning of the basis for his disability benefits, applied for death benefits which apparently were denied. For that reason, the same attorney who represented her in this case wrote to the Department of Veterans' Affairs on July 10, 1992, and requested that the denial be reconsidered. This letter was written over two years before Dr. Richard Rada was first retained and consulted on August 22, 1994.

In his letter, the plaintiff's attorney provided copies of Delbert's records and referred to his prisoner of war experience, his subsequent medical diagnosis, and extensive summaries of his Veterans' Administration medical records since the date of his discharge. At the conclusion of the five-page letter, plaintiff's attorney expressed the opinion that based on that medical history and Delbert's apparent attempt to escape from the hospital and some perceived danger, his death was probably related to his service-connected condition, and he requested that the Department reconsider the denial of Ida's claim for benefits.

Copies of the medical records referred to in the letter were provided to the defendant and were offered as exhibits without objection. However, the defendant also sought to admit the five-page letter written by the plaintiff's attorney. When the

16

objection was stated that the letter was inadmissible pursuant to *Allers v. Willis* (1982), 197 Mont. 499, 643 P.2d 592, because it related to a collateral source, the defendant sought to admit the letter after deleting the identity of the recipient and the reference to death benefits. However, the District Court held that because the letter was on plaintiff's attorney's letterhead, the potential for prejudice from its admission outweighed its probative value and denied its admission. The court did offer to allow the defendant to produce other evidence of the letter's contents. The defendant indicated it would call Ida Busta for the purpose of offering such evidence. However, when the District Court stated that that would be acceptable, the defendant declined to do so.

On appeal, the defendant contends that its proffered letter from the plaintiff's attorney should have been admitted as an admission by the plaintiff that Delbert died as a result of his preexisting mental condition, rather than because of Columbus Hospital's negligence. It contends that because it was not informed of his preexisting mental condition at the time of his admission to the hospital, it could not reasonably have been expected to protect him from harming himself.

As stated previously, we review a district court's evidentiary ruling to determine whether there has been an abuse of discretion. *In re $23,691.00*, 52 St. Rep. at 1065, 905 P.2d at 152. Furthermore, we will uphold a district court's decision, if correct, even though its reason for that decision may have been incorrect. *Norman v. City*

17

*of Whitefish* (1993), 258 Mont. 26, 30, 852 P.2d 533, 535; *District No. 55 v. Musselshell County* (1990), 245 Mont. 525, 527, 802 P.2d 1252, 1253.

The District Court held that the letter, as modified by the defendant, was inadmissible for several reasons. It concluded that it was an offer of compromise, and therefore inadmissible pursuant to Rule 408, M.R.Evid.; that it was evidence of a collateral source; and that when altered to exclude evidence of a collateral source, it was incomplete, and therefore, that its prejudicial impact outweighed any probative value.

The defendant contends that the reasons given by the District Court for excluding its proposed exhibit lack merit and that the letter was relevant pursuant to Rule 401, M.R.Evid., because it had a tendency to make more probable the hospital's claim that Delbert died as a result of his preexisting mental infirmity.

We conclude, however, that because the author of the proposed letter had no qualification for expressing a medical opinion regarding the cause of Delbert's behavior on December 1, the letter had little probative value and that the District Court did not abuse its discretion when it refused to admit the letter pursuant to Rule 403, M.R.Evid. Rule 403 provides that:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

18

In *Maulding v. Hardman* (1993), 257 Mont. 18, 847 P.2d 292, we held that an attorney is not qualified to express an expert medical opinion regarding a party's condition or prognosis for recovery. We held in that case that when the opinion was offered in the form of an affidavit it should have been rejected by the district court which should have, instead, relied on expert testimony. *Maulding*, 257 Mont. at 27, 847 P.2d at 298.

Had plaintiff's attorney been called as a witness at trial to express an opinion regarding the medical explanation for Delbert's departure from the hospital through his third floor window, the District Court would necessarily have had to exclude the testimony because he was unqualified to express such an opinion in a court of law. For that reason, his unqualified opinion expressed in correspondence to the Veterans' Administration over two years prior to the receipt of contrary information from a qualified expert had no probative value to any relevant issue in this case. On the other hand, simply because the proposed exhibit was authored by the plaintiff's attorney, it presented substantial potential for confusing or misleading the jury. The defendant had an opportunity to present qualified evidence that Delbert's injuries and death were contributed to or caused by his preexisting mental condition. In fact, the District Court gave the defendant great latitude toward that end. However, the defendant presented no qualified evidence from any medical expert or any observation by any lay witness that Delbert's preexisting mental condition contributed in

19

any way to his behavior on the morning of December 1, 1991, or that the preexisting mental condition affected his behavior at any other time from the date on which he was discharged from military service until the date of his death.

For these reasons, we conclude that the District Court did not abuse its discretion when it excluded the defendant's proposed exhibit which included statements from the plaintiff's attorney regarding Delbert's mental condition on the evening of his death.

## ISSUE 3

Did the District Court err when it refused to give the defendant's proposed instructions which defined proximate cause and stated the requirement that the decedent's injuries be foreseeable before causation could be established?

The hospital proposed, by its Instruction No. 20, that the District Court instruct the jury regarding the following definition of proximate cause:

> The proximate cause of an injury is that cause which, as a natural and continuous sequence, unbroken by any new and independent cause, produces the injury, and without which it would not have occurred.

The hospital's proposed instructions numbered 21 and 22 suggested the following requirements regarding foreseeability as it relates to proximate cause:

DEFENDANT'S PROPOSED INSTRUCTION NO. 21

> If you find that the Defendant Columbus Hospital was negligent, in order for its negligence to be the proximate cause of Delbert Busta's injuries and death, it must appear from the facts and circumstances surrounding the accident that the Columbus Hospital, as an ordinarily

20

prudent entity, could have reasonably foreseen that Delbert Busta's injury would be the natural and probable consequence of the hospital's actions.

DEFENDANT'S PROPOSED INSTRUCTION NO. 22

If you find the consequences of the hospital's actions were not reasonably foreseeable or were generally freakish, bizarre, or unpredictable, the actions of the hospital were not the proximate cause of decedent Busta's injuries and death.

The plaintiff proposed that the jury be instructed on the issue of causation in a format similar to the format suggested by our decision in *Kitchen Krafters, Inc. v. Eastside Bank of Montana* (1990), 242 Mont. 155, 789 P.2d 567. However, the plaintiff's proposed instruction referred to cause-in-fact as a "substantial factor." The defendant objected on that basis and plaintiff's proposed instruction on causation was withdrawn.

The District Court rejected the hospital's proposed instructions numbered 20, 21, and 22 on the basis that they did not satisfy the format required by *Kitchen Krafters*, and therefore, no instruction which defined proximate cause was submitted to the jury.

After the District Court indicated which instructions it would give and which instructions were refused, it asked whether the defendant had any objections. No objection was stated at that time to the court's failure to provide any instruction to the jury which defined proximate cause.

The jury was instructed that both parties had the burden of proving that the other was negligent and that the other party's

21

negligence was a proximate cause of Delbert's injuries. It was explained to the jury that a person is negligent if he or she fails to act as an ordinarily careful person would act under the circumstances. The jury was also instructed by the court that when it considered whether a hospital's premises were safe, it should consider the type of person who could reasonably be expected to be a patient there.

Pursuant to these instructions, the jury, by its verdict, found that both the hospital and Delbert were negligent and that each party's negligence contributed as a proximate cause to Delbert's injuries and death. It apportioned seventy percent of the total fault for his injuries to the hospital and thirty percent to Delbert.

Following entry of judgment for the plaintiff, the hospital moved for a new trial for several reasons, including the District Court's failure to define proximate cause in its instructions to the jury. That basis for the hospital's motion was rejected by the District Court. In explanation of its order, the District Court stated that the defendant had failed to offer a proximate cause instruction which adequately addressed the facts in this case and failed to object to the court's failure to define proximate cause until after the jury returned its verdict. The court added that to the extent it erred by not defining proximate cause for the jury, that error was harmless because the fact that this type of accident could happen from the failure to secure hospital windows was

22

indisputably foreseeable and there was no evidence of intervening acts by third parties which would interrupt the chain of causation. Finally, the District Court noted that part of the confusion which resulted in its failure to define proximate cause was attributable to the difficulty that district courts have dealing with that issue since this Court's decision in *Kitchen Krafters* and respectfully requested that this Court better settle the requirements for instruction of juries on the subject of causation in future cases.

On appeal, the hospital contends that because the District Court referred to "proximate cause" in other instructions, it was necessary that the term be explained to the jury. The hospital further contends that because this Court included foreseeability as an element of proximate cause in *Kitchen Krafters* and because the foreseeability of Delbert's conduct on December 1, 1991, was a specific issue, it was important that the jury be specifically instructed regarding foreseeability.

In response, the plaintiff contends that the defendant waived its objection to the District Court's failure to instruct on the issue of proximate cause by its failure to bring the court's omission to its attention before the jury's verdict was returned. The plaintiff further contends that even if the District Court erred, the error was harmless because causation was established by the undisputed evidence, and therefore, as a matter of law.

A district court has discretion when it decides how to instruct a jury and we will not reverse a district court's decision

23

absent an abuse of discretion. *Cechovic v. Hardin & Assoc.* (Mont. 1995), 902 P.2d 520, 527, 52 St. Rep. 854, 860. When we review instructions to a jury to determine whether they were properly given or refused, we consider the instructions in their entirety, as well as in connection with the other instructions given and the evidence at trial. *Story v. City of Bozeman* (1993), 259 Mont. 207, 222, 856 P.2d 202, 211.

When we review a district court's refusal to give an offered instruction, the following rules apply:

> It is not reversible error for a trial court to refuse an offered instruction unless such refusal affects the substantial rights of the party proposing the instruction, thereby prejudicing him.
>
> A party is not prejudiced by a refusal of his proposed instructions where the subject matter of the instruction is not applicable to the pleadings and facts, or not supported by the evidence introduced at trial, or the subject matter is adequately covered by other instructions submitted to the jury.

*King v. Zimmerman* (1994), 266 Mont. 54, 64, 878 P.2d 895, 902 (quoting *Cottrell v. Burlington Northern R.R. Co.* (1993), 261 Mont. 296, 306, 863 P.2d 381, 387; *see also Ganz v. United States Cycling Fed'n* (Mont. 1995), 903 P.2d 212, 216, 52 St. Rep. 1030, 1033).

The law of foreseeability, as it relates to liability law in Montana, has had a tortuous history. Based on the concerns expressed by the District Court in this case and similar sentiments reflected by *amicus curiae* who have submitted briefs on this issue, we conclude that in the interest of clarifying issues involved in litigation where negligence is alleged, it is appropriate that we

24

address the role of foreseeability and the appropriate manner for instructing juries on the issue of causation.

Any discussion of foreseeability as it relates to liability law begins with the oft-cited decision of the Court of Appeals of New York in *Palsgraf v. Long Island Railroad Co.* (N.Y. 1928), 162 N.E. 99. In that case, the plaintiff was standing on a platform of the defendant's railroad when a guard attempted to assist another passenger aboard the departing train. In doing so, he dislodged a package from the passenger's hand which contained fireworks. The contents exploded when the package hit the ground. The shock from the explosion knocked down scales many feet away. The falling scales struck the plaintiff, and she was injured. On appeal from a judgment in favor of the plaintiff, Chief Justice Cardozo, writing for a four-person majority, reversed that judgment on the basis that absent a foreseeable injury to the plaintiff there was no duty and that absent a duty there was no negligence. In language that formed the basis for a number of subsequent decisions in Montana, Cardozo wrote that:

> The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension. . . . This does not mean, of course, that one who launches a destructive force is always relieved of liability, if the force, though known to be destructive, pursues an unexpected path. "It was not necessary that the defendant should have had notice of the particular method in which an accident would occur, if the possibility of an accident was clear to the ordinarily prudent eye."

*Palsgraf*, 162 N.E. at 100.

25

Writing in dissent, Justice Andrews disagreed that duty requires a foreseeable plaintiff, but instead contended that all persons have a duty of care to the world at large. He took the position that if foreseeability has a place as a limitation on an individual's liability for damages, it is in the context of proximate cause. He stated that:

> What we do mean by the word "proximate" is that, because of convenience, of public policy, of a rough sense of justice, the law arbitrarily declines to trace a series of events beyond a certain point. This is not logic. It is practical politics.

*Palsgraf*, 162 N.E. at 103 (Andrews, J., dissenting).

Andrews went on to state that in analyzing proximate cause,

> [t]he court must ask itself whether there was a natural and continuous sequence between cause and effect. Was the one a substantial factor in producing the other? Was there a direct connection between them, without too many intervening causes? Is the effect of cause on result not too attenuated? Is the cause likely, in the usual judgment of mankind, to produce the result? Or, by the exercise of prudent foresight, could the result be foreseen?

*Palsgraf*, 162 N.E. at 104 (Andrews, J., dissenting).

Therefore, from an early point in American jurisprudence there was disagreement among knowledgeable scholars regarding the role of foreseeability in the formulation of negligence law. The conviction, as expressed by Cardozo, was that without foreseeability there was no duty, and without duty there could be no liability. The view as expressed by Andrews was that foreseeability was an element of proximate cause and reflected the practical political judgment of whether effect of cause on result

26

was too attenuated. Neither, however, suggested that foreseeability should be considered on a redundant basis as part of both duty and proximate cause.

We have, as a Court, considered foreseeability in our discussions of proximate cause. However, originally those discussions were limited to situations where it was alleged that acts of independent third parties intervened following the defendant's act to sever the causal relationship between one person's conduct and another person's damage. *Lencioni v. Long* (1961), 139 Mont. 135, 139, 361 P.2d 455, 457.

Other than in the context of intervening acts by third parties, our early decisions clearly chose to follow the majority view from *Palsgraf*. In *Mang v. Eliasson* (1969), 153 Mont. 431, 437, 458 P.2d 777, 781, we cited *Palsgraf* with approval and held that:

> As a classic opinion states: "The risk reasonably to be perceived defines the duty to be obeyed." *Palsgraf v. Long Island R. Co.*, 248 N.Y. 339, 162 N.E. 99, 100, 59 A.L.R. 1253. That is to say, defendant owes a duty with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous, and hence negligent in the first instance.

In *Mang*, the plaintiff brought an action to recover damages for a reduced yield of alfalfa seed caused by weeds which the defendant allowed to be blown from his property to the plaintiff's property. Following a verdict for the plaintiff, the defendant argued on appeal that it had breached no legal duty to the plaintiff. This Court agreed and explained that to prove actionable negligence a party must prove "existence of a duty, the

27

breach thereof and a resulting injury." *Mang*, 153 Mont. at 435, 458 P.2d at 780. We explained the role of foreseeability, as it relates to duty, as follows:

> Foreseeability is of prime importance in establishing the element of duty, and the question of defendants' negligence, if any, must of necessity hinge on the finding of a breach of that duty. If a reasonably prudent defendant can foresee neither any danger of direct injury nor any risk from an intervening cause he is simply not negligent.
>
> If the chief element in determining whether defendant owes a duty or obligation to plaintiff is the foreseeability of the risk then that factor will be of prime concern in every case. Further, because it is inherently intertwined with foreseeability, such duty or obligation must necessarily be adjudicated only upon a case-to-case basis. Therefore, we do not now predetermine defendants' obligations in every situation by a fixed category; no immutable rule can be established to determine the extent of that obligation for every circumstance of the future. We do, however, define guidelines which will aid in the resolution of such an issue as is presented in the instant case.
>
> . . . .
>
> . . . The obligation of defendants turns on whether:
>
>> ". . . the offending conduct foreseeably involved unreasonably great risk of harm to the interests of someone other than the actor. . . . Duty, in other words, is measured by the scope of the risk which negligent conduct foreseeably entails."
>
> . . . And absent foreseeability, there is no duty owed by defendants to plaintiff. . . .
>
> In view of our holding that plaintiff failed to show a breach of duty owed by defendants, thus failing to establish that defendants were negligent in the first instance, he has failed to establish any claim upon which relief may be granted and accordingly, it is unnecessary to dwell on the law of causation. . . .

28

> We may assume without deciding that negligence, not at large or in the abstract but in relation to the plaintiff, would entail liability for any and all consequence however novel or extraordinary. Palsgraf v. Long Island R. Co., supra, 248 N.Y. 339, 162 N.E. at 101. However, the consequences to be followed must first be rooted in a wrong.

*Mang*, 153 Mont. at 437-39, 458 P.2d at 781-82.

In *Ekwortzel v. Parker* (1971), 156 Mont. 477, 482 P.2d 559, we declined to apply the foreseeability requirement set forth in *Mang* in a manner which would require that the specific accident which resulted be foreseen. *Ekwortzel*, 156 Mont. at 483, 482 P.2d at 563. However, we did, from the time that *Mang* was decided until our decision in *Kitchen Krafters*, consistently relate the notion of foreseeability to the requirement of duty. *See, e.g., Ford v. Rupple* (1972), 161 Mont. 56, 504 P.2d 686; *Williams v. Montana Nat'l Bank* (1975), 167 Mont. 24, 534 P.2d 1247; *Schafer v. State* (1979), 181 Mont. 102, 592 P.2d 493; *Pretty On Top v. City of Hardin* (1979), 182 Mont. 311, 597 P.2d 58; *Ambrogini v. Todd* (1982), 197 Mont. 111, 642 P.2d 1013; *Belue v. State* (1982), 199 Mont. 451, 649 P.2d 752.

In fact, our earlier decisions discuss causation in terms of cause-in-fact or the "but for" test, and discuss proximate cause only as it relates to continued liability following an intervening act. *See Ford*, 161 Mont. at 65, 504 P.2d at 691; *Williams*, 167 Mont. at 30, 534 P.2d at 1250.

In *Young v. Flathead County* (1988), 232 Mont. 274, 757 P.2d 772, we held for the first time that proof of proximate cause requires more

29

than proof of cause-in-fact or satisfaction of the "but for" test. However, once again, that discussion occurred in the context of this Court's conclusion that the chain of causation had been broken by independent intervening causes. We specifically reversed the district court because "[n]umerous interruptions in the chain of events occurred that could be considered the injury causing damage." *Young*, 232 Mont. at 283, 757 P.2d at 778. Although intervening cause was not analyzed in the typical fashion, *Young* was clearly an intervening cause case.

The first time that the word "foreseeable" ever appeared in the context of "proximate cause" in one of our opinions, other than as related to intervening causes, was in *Kitchen Krafters, Inc. v. Eastside Bank of Montana* (1990), 242 Mont. 155, 789 P.2d 567. In that case, we affirmed the two-tiered analysis of causation set forth in *Young*. We explained that the cause-in-fact requirement is normally established by the "but for" test by proving that a party's injury would not have occurred "but for" the other party's conduct. We also reaffirmed prior decisions in which we held that if two or more causes concur to bring about an event, then cause-in-fact is established by the "substantial factor" test which we had previously approved in *Rudeck v. Wright* (1985), 218 Mont. 41, 709 P.2d 621, and *Kyriss v. State* (1985), 218 Mont. 162, 707 P.2d 5. We held that when either the "but for" test or the "substantial factor" test was satisfied, a party has established that the other party's conduct

30

was the cause-in-fact of an injury. We then went on to add, however, that once cause-in-fact is proven, "proximate causation" must also be established. We held for the first time that:

> Proximate cause is normally analyzed in terms of foreseeability. Simply stated, one is only liable for consequences which are considered to be reasonably foreseeable. Prosser & Keeton at § 43. If the consequences of one's wrongful act are not reasonably foreseeable, then it follows that it was not proximately caused by that act. Using this analysis, one must look forward through the chain of causation in order to determine whether the events which occurred were foreseeable. If they were, the element of proximate cause is satisfied and liability will attach. Prosser & Keeton at § 43.

*Kitchen Krafters*, 242 Mont. at 168, 789 P.2d at 575.

Having added a requirement that foreseeability be established as part of causation in addition to the previous requirement that it be considered in determination of duty, we then went on to hold that juries must be specifically so instructed. We held that:

> In order to be properly instructed on proximate cause, the jury must be directed to look forward through the chain of causation, and to determine whether events which occurred subsequent to Eastside's wrongful act were foreseeable. A proper instruction on proximate cause should be worded as follows:
>
> In order for the defendant's negligence (failure to disclose) to be the proximate cause of the plaintiff's injury, it must appear from the facts and circumstances surrounding the accident [the nondisclosure] that the defendant as an ordinarily prudent person, could have foreseen that the plaintiff's injury would be the natural and probable consequence of the wrongful act.

*Kitchen Krafters*, 242 Mont. at 169, 789 P.2d at 575 (alteration in original).

31

We repeated the requirement from the *Kitchen Krafters* opinion that foreseeability be considered as part of proximate cause in *Thayer v. Hicks* (1990), 243 Mont. 138, 155, 793 P.2d 784, 795; *Kiger v. State* (1990), 245 Mont. 457, 460, 802 P.2d 1248, 1250; *United States Fidelity and Guaranty Co. v. Camp* (1992), 253 Mont. 64, 69, 831 P.2d 586, 589; *King v. State* (1993), 259 Mont. 393, 397, 856 P.2d 954, 956; *Logan v. Yellowstone County* (1994), 263 Mont. 218, 222, 868 P.2d 565, 567; and *Mills v. Mather* (1995), 270 Mont. 188, 197, 890 P.2d 1277, 1283. However, all of these cases, other than *Logan*, involved issues regarding the foreseeability of intervening causes. In such situations we have traditionally held that foreseeability is an issue related to causation. *See Halsey v. Uithof* (1975), 166 Mont. 319, 328, 532 P.2d 686, 690-91.

In *Sizemore v. Montana Power Company* (1990), 246 Mont. 37, 803 P.2d 629, it is interesting that we noted:

> Foreseeability can be determined in one of two ways. Some courts analyze the issue under the element of duty. These courts take the view that the scope of defendant's duty is determined by a foreseeability of any harm which may arise as a result of his negligent conduct. See e.g. *Palsgraf v. Long Island Railroad Co.* (1928), 248 N.Y. 339, 162 N.E. 99, 100. Other courts have analyzed foreseeability under the issue of proximate cause. In doing so, they have taken the view that all persons owe a duty to the world at large to act reasonably in order to prevent injury to their fellow man. *Palsgraf*, 162 N.E. at 104 (Andrews dissenting). If this duty is breached, it then becomes necessary to determine whether the consequences of the breach were reasonably foreseeable to the defendant. If the consequences were reasonably foreseeable, proximate cause is established and liability will follow.

32

*Sizemore*, 246 Mont. at 46, 803 P.2d at 635.

Since *Sizemore* involved allegations of a superseding intervening event, we analyzed foreseeability as part of proximate cause in that case. We made no mention of the fact that since *Kitchen Krafters*, Montana has two concurrent lines of authority--one which analyzes foreseeability as part of duty, and a second which considers it as part of proximate cause.

Therefore, as the law in Montana currently stands, the issue of foreseeability is considered twice in our analysis of liability for a negligent act. It is first considered as part of the analysis of duty and negligence pursuant to our decision in *Mang*, 153 Mont. 431, 458 P.2d 777. It is then considered as part of a two-pronged approach to causation pursuant to our decision in *Kitchen Krafters*, 242 Mont. 155, 789 P.2d 567.

Although we acknowledge that there are other jurisdictions which engage in such a dual analysis (*see, e.g., Calkins v. Cox Estates* (N.M. 1990), 792 P.2d 36; *McCain v. Florida Power Corp.* (Fla. 1992), 593 So. 2d 500; *Nelson by Tatum v. Commonwealth Edison Co.* (Ill. App. 2d 1984), 465 N.E.2d 513), knowledgeable writers and the better-reasoned decisions of other jurisdictions criticize such a redundant consideration of foreseeability. For example, in <u>Modern Tort Law</u> the authors state that:

> Much confusion has resulted from the erroneous application of the requirement of foreseeability to causation. In referring to proximate cause, many decisions have confused the element of fault and have

33

employed foreseeability, properly an element of fault but not of causation.

1 J. D. Lee and Barry A. Lindahl, Modern Tort Law § 5.01, at 153 (rev. ed. 1990).

At § 5.02 the same authors point out that:

There is, unfortunately, substantial and respectable authority that foreseeability is an element of causation.
. . .

This application of foreseeability has long been the subject of criticism by courts and legal scholars. Foreseeability does not touch on the causal element. Foreseeability relates only to the element of fault.

. . . .

. . . As an early Minnesota case pointed out, "What a man may reasonably anticipate is important, and may be decisive, in determining whether an act is negligent, but is not at all decisive in determining whether that act is the proximate cause of an injury which ensues." [*Christianson v. Chicago St. P., M. & O. Ry. Co.* (Minn. 1896), 69 N.W. 640.] And the Wisconsin court has stated:

This court is definitely committed to the principle that, while foreseeability is an element to be considered by the jury in determining negligence, it has no part in the jury's decision of whether particular negligence found by it is causal. [*Strahlendorf v. Walgreen Co.* (Wis. 1962), 114 N.W.2d 823.]

Dean Prosser stated:

It is simpler, and no doubt more accurate, to state the problems in terms of "duty:" is the defendant under a legal obligation to protect the plaintiff against such unforeseeable consequences of his own negligent acts? [William L. Prosser, Law of Torts 289 (3d ed. 1964).]

And Harper and James said: "Foreseeability of damage is altogether irrelevant in determining the existence of the cause in fact relationship." [2 Harper & James, Law of Torts 1135 (1956).]

34

Professor Leon Green, a persistent critic of the foreseeability test, as it is used in connection with proximate cause, remarked, "Clearly the issue of causal relation between the defendant's conduct and the plaintiff's injury is not determined by foreseeability." [Leon Green, *The Causal Relation Issue in Negligence Law*, 60 Mich. L. Rev. 543, 549 (1962).] The element of cause becomes operative only if a duty is breached and damages result, whereupon the defendant becomes liable for the damages directly caused by his breach of duty. . . . "Causal relation is a neutral issue, blind to right and wrong." [Green, 60 Mich. L. Rev. at 549.]

. . . .

Unfortunately, however, the application of the foreseeability test to causation has had a firm hold in legal literature, and some recent cases continue to compound the error. Thus, the problem of causation, difficult as it is, has been made more complex by employing foreseeability as a test of legal cause, when foreseeability should be restricted to the issue of negligence.

1 Modern Tort Law § 5.02 at 159-62.

In the Law of Torts, the authors state that:

It is obvious that under such an analysis of the duty problem, foreseeability is distinctly a factor that puts a considerable limitation on the extent of liability, even though it should be held to play no part whatever in determining the issue of proximate cause. It is also clear that if this analysis of the duty problem is accepted, no good, but only confusion, can result from repeating the same inquiries as to foreseeability under the cause issue as were asked and answered (or should have been) under the duty issue.

4 Fowler V. Harper, et al., The Law of Torts § 20.5, at 139 (2d ed. 1986) (footnotes omitted).

Finally, in Prosser and Keeton on Torts the authors state:

Once it is established that the defendant's conduct has in fact been one of the causes of the plaintiff's injury, there remains the question whether the defendant should be legally responsible for the injury. Unlike the fact of causation, with which it is often hopelessly

confused, this is primarily a problem of law. It is sometimes said to depend on whether the conduct has been so significant and important a cause that the defendant should be legally responsible. But both significance and importance turn upon conclusions in terms of legal policy, so that they depend essentially on whether the policy of the law will extend the responsibility for the conduct to the consequences which have in fact occurred. Quite often this has been stated, and properly so, as an issue of whether the defendant is under any duty to the plaintiff, or whether the duty includes protection against such consequences. This is not a question of causation, or even a question of fact, but quite far removed from both; and the attempt to deal with it in such terms has led and can lead only to utter confusion.

The term "proximate cause" is applied by the courts to those more or less undefined considerations which limit liability even where the fact of causation is clearly established. The word "proximate" is a legacy of Lord Chancellor Bacon, who in his time committed other sins. The word means nothing more than near or immediate; and when it was first taken up by the courts it had connotations of proximity in time and space which have long since disappeared. It is an unfortunate word, which places an entirely wrong emphasis upon the factor of physical or mechanical closeness. . . . .

. . . .

It is quite possible to state every question which arises in connection with "proximate cause" in the form of a single question: was the defendant under a duty to protect the plaintiff against the event which did in fact occur? . . .

. . . .

. . . "Proximate cause," in short, has been an extraordinarily changeable concept. "Having no integrated meaning of its own, its chameleon quality permits it to be substituted for any one of the elements of a negligence case when decision on that element becomes difficult. . . . No other formula . . . so nearly does the work of Aladdin's lamp." [Leon Green, *Proximate Cause in Texas Negligence Law*, 28 Tex. L. Rev. 471 (1950).]

W. Page Keeton, et al., <u>Prosser and Keeton on Torts</u> § 42, at 272-76

(5th ed. 1984).

Many courts have eliminated this redundant analysis and simplified the jury's responsibility by limiting the analysis of foreseeability to a determination of whether there is negligence in the first place, and then dealing with cause as simply cause-in-fact. Two of the jurisdictions in our own area which have done so are the states of Washington and Oregon. In *Rikstad v. Holmberg* (Wash. 1969), 456 P.2d 355, the Washington Supreme Court stated that:

> The better considered authorities do not regard foreseeability as the handmaiden of proximate cause. To connect them leads to too many false premises and confusing conclusions. Foreseeability is, rather, one of the elements of negligence; it is more appropriately attached to the issues of whether defendant owed plaintiff a duty, and, if so, whether the duty imposed by the risk embraces that conduct which resulted in injury to plaintiff. The hazard that brought about or assisted in bringing about the result must be among the hazards to be perceived reasonably, and with respect to which defendant's conduct was negligent. *See* Restatement (Second) of Torts § 435, comment c (1965). . . .
>
> It is the misuse of foreseeability--that is, discussion of the improbable nature of the accident in relation to proximate cause--that led the trial judge, in the instant case, to conclude that the challenge should be sustained.

*Rikstad*, 456 P.2d at 358.

The comment in the Restatement (Second) of Torts referred to in the Washington Court's opinion is part of the Restatement's analysis of foreseeability under its section on causation. The authors there state:

> Strictly, the problem before the court is one of determining whether the duty imposed on the actor was designed to protect the one harmed from the risk of harm

37

from the hazard in question. (See § 281, comment *e*, and § 449.) However, courts frequently treat such problems as problems of causation. (See § 281, comment *e*, and § 430, comment *a*.)

Restatement (Second) of Torts § 435 cmt. c (1965).

Similar analyses in Oregon occurred in *Sworden v. Gross* (Or. 1966), 409 P.2d 897, and *Brennen v. City of Eugene* (Or. 1979), 591 P.2d 719.

We agree with the Washington Court and with the cited authors that the better-reasoned authorities address foreseeability as part of the analysis of "duty," rather than "proximate cause," and that to analyze it under both issues leads only to confusion which can be easily avoided.

However, the arguments quoted from the previous authors and the reasoning of the Washington Court are even more compelling based on Montana's statutory framework for determining liability. Section 1-1-204(1), MCA, defines negligence as "a want of attention to the nature or <u>probable consequences</u> of the act or omission that a prudent man would ordinarily give in acting in his own concerns." (Emphasis added.) This definition suggests that foreseeability is an element of negligence, and therefore, properly considered with the existence of a duty.

On the other hand, § 27-1-317, MCA, which discusses the damages for which a negligent actor is responsible, defines those damages as "the amount which will compensate for all the detriment proximately caused thereby, <u>whether it could have been anticipated or not</u>." (Emphasis added.) By equating damages "proximately caused

38

thereby" with actual damages, whether they "could have been anticipated or not," our statutory scheme specifically precludes the applicability of a foreseeability requirement to the issue of proximate cause.

We therefore reverse that part of our decision in *Kitchen Krafters, Inc. v. Eastside Bank of Montana* (1990), 242 Mont. 155, 789 P.2d 567, which requires a two-tiered analysis of causation which includes consideration of foreseeability in cases other than those cases where there has been an allegation that the chain of causation is severed by an independent intervening cause. There are several reasons which compel this result. First, that part of the opinion which suggests language for a proximate cause instruction erroneously requires proof of an intentional act, rather than a negligent act, when it suggests the following language:

> [I]t must appear from the facts and circumstances surrounding the accident . . . that defendant as an ordinarily prudent person, could have foreseen that plaintiff's injury would be the natural and probable consequence of the wrongful act.

*Kitchen Krafters*, 242 Mont. at 169, 789 P.2d at 575.

Second, the requirement that foreseeability be considered as part of proximate cause is redundant with the existing requirement that foreseeability be considered as part of the analysis of duty.

Third, our statutory scheme of laws relating to liability requires that foreseeability be considered as part of the negligence analysis and that it not be considered as part of proximate cause.

39

Fourth, legal concepts such as "proximate cause" and "foreseeability" are best left to arguments between attorneys for consideration by judges or justices; they are not terms which are properly submitted to a lay jury, and when submitted can only serve to confuse jurors and distract them from deciding cases based on their merits.

In those cases which do not involve issues of intervening cause, proof of causation is satisfied by proof that a party's conduct was a cause-in-fact of the damage alleged. As stated in Prosser and Keeton on Torts § 41, at 266 (5th ed. 1984), a party's conduct is a cause-in-fact of an event if "the event would not have occurred but for that conduct; conversely, the defendant's conduct is not a cause of the event, if the event would have occurred without it."

We hold that with the exception of those cases involving allegations of independent intervening cause or multiple causes, it is sufficient to instruct the jury, as recommended in 1989 by the Montana Supreme Court Commission on Civil Jury Instructions, that: "The defendant's conduct is a cause of (injury/death/damage) if it helped produce it and if the (injury/death/damage) would not have occurred without it." Montana Pattern Instruction 2.08 (rev. 11/1/89).

In those cases where chain of causation is an issue (e.g., where there is an allegation of an independent intervening cause), we recommend, as did the Commission in 1989, the following instruction:

40

The defendant's conduct is a cause of the (injury/ death/damage) if, in a natural and continuous sequence, it helped produce it and if the (injury/death/damage) would not have occurred without it.

Montana Pattern Instruction 2.08 (rev. 11/1/89).

In those cases where there are allegations that the acts of more than one person combined to produce a result (e.g., when the plaintiff alleges negligence and the defendant alleges contributory negligence, or when there are multiple defendants), we acknowledge that the recommended cause-in-fact instruction would be confusing and misleading. Therefore, in those cases, we recommend continued use of the substantial factor instruction approved in *Rudeck v. Wright* (1985), 218 Mont. 41, 709 P.2d 621, and *Kyriss v. State* (1985), 218 Mont. 162, 707 P.2d 5. We further recommend that terms such as "proximate cause" or "legal cause" and "reasonable foreseeability," which have some significance to lawyers and judges, not be allowed to confuse jurors by the inclusion of those terms in jury instructions. To the extent that foreseeability raises a jury issue, it is adequately addressed by the definition of negligence included in Montana Pattern Instruction 2.00.[1] To the extent that foreseeability raises issues of public policy, such as those about which Justice Andrews expressed concern in his dissent in *Palsgraf*, the subject is properly dealt with as an issue of law.

---

[1]Montana Pattern Instruction 2.00 (rev. 2/7/91) defines negligence as "the failure to use reasonable care. Negligence may consist of action or inaction. A person is negligent if he fails to act as an ordinarily prudent person would act under the circumstances."

41

We agree with the conclusion of the California Supreme Court, as stated in *Mitchell v. Gonzales* (Cal. 1991), 819 P.2d 872, that:

> It is reasonably likely that when jurors hear the term "proximate cause" they may misunderstand its meaning or improperly limit their discussion of what constitutes a cause in fact. Prosser and Keeton's concern that the word "proximate" improperly imputes a spatial or temporal connotation is well founded. Webster's Third New International Dictionary (1981) page 1828, defines proximate as "very near," "next," "immediately preceding or following." Yet, "[p]roximity in point of time or space is no part of the definition [of proximate cause] . . . except as it may afford evidence for or against proximity of causation. [Citation.]" (*Osborn v. City of Whittier* (1951) 103 Cal.App.2d 609, 616, 230 P.2d 132.)
>
> Given the foregoing criticism, it is not surprising that a jury instruction incorporating the term "proximate cause" would come under attack from courts, litigants, and commentators. . . .
>
> The misunderstanding engendered by the term "proximate cause" has been documented. In a scholarly study of 14 jury instructions, BAJI No. 3.75 produced proportionally the most misunderstanding among lay persons. (Charrow, *Making Legal Language Understandable: A Psycholinguistic Study of Jury Instructions* (1979) 79 Colum.L.Rev. 1306, 1353 (hereafter *Psycholinguistic Study*).) . . . in one experiment, "the term 'proximate cause' was misunderstood by 23% of the subjects. . . . They interpreted it as 'approximate cause,' 'estimated cause,' or some fabrication."

*Mitchell*, 819 P.2d at 877-78 (alterations in original; footnotes omitted).

The point we wish to make is that the only purpose which is properly served by instructions to the jury is to assure a decision consistent with the evidence and the law. This can only be accomplished when the instructions are as plain, clear, concise, and as brief as possible. Instructions should never be proposed or

42

given for the purpose of creating one more obstacle to a resolution of a case on its merits.

Based on the aforementioned analysis, and our reversal of the requirement in *Kitchen Krafters* that causation instructions include a discussion of foreseeability, we conclude that the District Court's failure to define proximate cause was at most harmless error and affirm the District Court's denial of the hospital's motion for a new trial based on instructional error.

Although the hospital makes occasional reference in its appellate brief and argument to independent intervening causes, there was no proof offered at the time of trial that any person contributed as a cause of Delbert's injury and death other than Delbert and the defendant hospital. Therefore, a proper instruction to the jury in this case on the subject of causation would have related solely to cause-in-fact as articulated by the substantial factor instruction. However, as we held in *Davis v. Church of Jesus Christ of Latter Day Saints* (1990), 244 Mont. 61, 71, 796 P.2d 181, 186, we will not reverse a district court for failure to provide a necessary instruction to the jury unless the court's omission affected the substantial rights of the complaining party. In this case, there was no prejudice to the hospital by the District Court's failure to instruct the jury on cause-in-fact. First, cause-in-fact is a simple concept that most lay people are capable of understanding. Second, there was no disagreement with plaintiff's contention that the design of the hospital's windows

43

contributed to Delbert's fall and injuries. The issue was simply whether the hospital was negligent by allowing its windows to remain in a condition which would permit a patient to either escape or fall through them. That issue was decided in Ida Busta's favor based on proper instructions to the jury and was supported by substantial and virtually uncontroverted evidence.

For these reasons, we conclude that the District Court did not err when it refused to give the defendant's proposed instructions which defined proximate cause and which stated the requirement that decedent's injuries be foreseeable before causation could be established; and that the District Court's failure to instruct the jury regarding the meaning of cause-in-fact was harmless error.

ISSUE 4

Did the District Court err when it refused to offset benefits received by Ida Busta from the Veterans' Administration against the damages awarded for the decedent's wrongful death?

Following trial, the hospital moved the court pursuant to § 27-1-308, MCA, to deduct from the plaintiff's judgment that amount Ida Busta received from the Veterans' Administration due to her husband's death. Section 27-1-308, MCA, provides in relevant part that:

> (1) In an action arising from bodily injury or death when the total award against all defendants is in excess of $50,000 and the plaintiff will be fully compensated for his damages, exclusive of court costs and attorney fees, a plaintiff's recovery must be reduced by any amount paid or payable from a collateral source that does not have a subrogation right.

44

Section 27-1-307(1), MCA, defines "collateral source" as:

[A] payment for something that is later included in a tort award and which is made to or for the benefit of a plaintiff or is otherwise available to the plaintiff:
(a) for medical expenses and disability payments under the federal Social Security Act, any federal, state, or local income disability act, or any other public program;
. . . .
(e) any other source, except the assets of the plaintiff or of his immediate family if he is obligated to repay a member of his immediate family.

The District Court denied the hospital's motion for offset for the following reasons:

1. The court found that the heirs will not be fully compensated for their damages, due to the reduction of their award based on contributory fault;

2. The court found that the Veterans' Administration benefits received by Ida Busta were not medical expenses or disability payments, and therefore, not "collateral source" as defined in § 27-1-307, MCA; and

3. The court found that the general nature of the defendant's verdict form makes it impossible to determine what, if any, amounts were awarded by the jury for a loss against which the collateral source should be offset.

On appeal, the hospital contends that the death benefits that Ida Busta received were included in the definition of "collateral source" at subsection (1)(e) of § 27-1-307, MCA, by its reference to "any other source."

45

However, it is not necessary that we resolve whether death benefits from the Veterans' Administration are included within the statutory definition of "collateral source," or whether the plaintiff has been fully compensated where her judgment has been reduced by comparative negligence. Section 27-1-308, MCA, clearly provides for reduction of only that part of a recovery which has previously been compensated by a collateral source. In this case, Ida Busta was awarded death benefits by the Veterans' Administration for the economic loss which resulted from her husband's death. The jury, on the other hand, was instructed that its wrongful death damage award should include damages for not only financial support which the heirs lost, but also for "the value of the society, comfort, guidance, education, care, protection and companionship which Ida Busta, William Busta and Charles Busta have lost by reason of the death," and that its award should "include reasonable compensation to them [the heirs] for their grief, sorrow and mental anguish resulting from the death."

The jury returned a special verdict which awarded damages to the heirs in the amount of $800,000. There is no indication from the verdict form what, if any, amount of the verdict was for the loss of Delbert's financial support. Therefore, there was no method by which the District Court could calculate what, if any amount, the hospital was entitled to offset by the amount of previous Veterans' Administration death benefits awarded to Ida. Because there was no factual basis upon which the District Court

46

could properly grant the hospital's motion for offset, the motion was properly denied. For these reasons, we affirm the District Court's denial of the hospital's motion for statutory offset pursuant to § 27-1-308, MCA.

Based on our discussion of and holding regarding each of the issues raised, we affirm the judgment of the District Court.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

47

Justice Karla M. Gray, specially concurring.

I concur in the Court's opinion on issues one and two and specially concur on issues three and four.

With regard to issue three, which relates to the District Court's failure to instruct on proximate cause, I agree with the result the Court reaches on the issue and with most of its discussion of our case law and other authorities vis-a-vis foreseeability as an element of proximate cause. My one disagreement with the Court in this regard is in its interpretation of § 27-1-317, MCA. I do not read the statute as precluding the consideration of foreseeability as part of causation. Conversely, however, the statute certainly does not require us to consider foreseeability in analyzing causation. Thus, I am persuaded by the remainder of the authorities cited by the Court that we erred in doing so in Kitchen Krafters where no intervening cause issue required its inclusion.

With regard to issue four, whether the hospital was entitled to offset the VA benefits Ida Busta received against the wrongful death damages awarded, I concur in the Court's opinion. I specially concur only to add that the hospital prepared the Special Verdict which was submitted to the jury and which rendered it impossible for the District Court to calculate whether any offset was authorized (even assuming that the VA benefits met the statutory definition of collateral source). If the hospital wanted to assert entitlement to the offset, it was incumbent upon the hospital to structure a verdict form which would make such a calculation possible.

_____
Justice

48

Justice Charles E. Erdmann concurring in part and dissenting in part.

I concur in the majority's opinion on Issues 1, 2, and 4, but write separately to dissent on Issue 3.

I disagree with the majority's holding that the District Court's failure to instruct on proximate cause was harmless error. I am convinced that the failure to define proximate cause for the jury was reversible error. In fact, the jury received no instructions at all which defined causation. Furthermore, I disagree with the majority's analysis of foreseeability as applied to proximate cause and therefore dissent from the majority's decision to overrule the requirement in Kitchen Krafters v. Eastside Bank of Montana (1990), 242 Mont. 155, 789 P.2d 567, that causation instructions include a discussion of foreseeability.

In Davis v. L.D.S. Church (1990), 244 Mont. 61, 796 P.2d 181, we held that it was error for the lower court to not instruct on proximate cause and stated that the question of proximate cause is an issue of fact to be decided by the jury. Davis, 796 P.2d at 186. In order to constitute reversible error, the lower court's actions must affect the substantial rights of the complaining party. Davis, 796 P.2d at 186 (citing Rollins v. Blair (1989), 235 Mont. 343, 767 P.2d 328. In Davis we concluded that the defendant was not prejudiced by the court's failure to instruct on proximate cause and therefore held the error to be harmless. Davis, 796 P.2d at 187.

49

However, under the circumstances of the present case, I would hold that the District Court erred in not instructing the jury on proximate cause. A number of instructions given by the District Court contained the phrase "proximate cause," but the jury was not given the benefit of any guidance from the court on this crucial concept. It is the duty of the court to instruct the jurors fully and correctly on all applicable laws. Billings Leasing Co. v. Payne (1978), 176 Mont. 217, 224, 577 P.2d 386, 390. As this Court noted in Billings Leasing Co.:

> " * * * In instructing the jurors, we must assume that they have no knowledge of the rules of law and that therefore, they must be instructed on all points of law which, under any reasonable theory, might be involved in their deliberations, to the end that their decision will be according to the law and the evidence and untinged by any private and possibly false opinion of the law that they entertain."

> . . . .

> Jury instructions are crucial to a jury's understanding of the case and, unfortunately, counsel cannot always be relied upon to provide those instructions. . . .

> "It is the inescapable duty of the trial judge to instruct the jurors, fully and correctly, on the applicable law of the case, and to guide, direct, and assist them toward an intelligent understanding of the legal and factual issues involved in their search for truth. *The court must instruct the jury properly on the controlling issues in the case* even though there has been no request for an instruction or the instruction requested is defective."

50

<u>Billings Leasing Co.</u>, 577 P.2d at 390-91 (quoting McBride, <u>The Art of Instructing the Jury</u> at 17 (1969), and Wright & Miller, <u>Federal Practice and Procedure, Civil</u> § 2556).

In the present case, the hospital offered an instruction on proximate cause which was refused by the District Court. The plaintiff withdrew her instructions defining causation. As a result, the jury was not instructed on the crucial concept of proximate cause which is a key element in all negligence actions. After analyzing foreseeability and proximate cause, the majority determines this to be harmless error. I differ with the majority's analysis and position on foreseeability and proximate cause and conclude that the District Court's failure to define proximate cause for the jury in this case was reversible error.

The majority claims it is redundant and confusing to jurors to focus on foreseeability when analyzing both the "duty" element and "proximate cause" element of the tort of negligence. On the contrary, I believe that such a dual analysis of foreseeability is a necessary and reasonable analysis which has, unfortunately, been complicated in Montana by the confusing wording of the <u>Kitchen Krafters</u> instruction.

In Mang v. Eliasson (1969), 153 Mont. 431, 458 P.2d 777, and its progeny, we determined that the concept of foreseeability was a part of the "duty" element. <u>See</u> Ford v. Rupple (1972), 161 Mont. 56, 504 P.2d 686; Williams v. Montana National Bank (1975), 167 Mont. 24, 534 P.2d 1247; Schafer v. State (1979), 181 Mont. 102, 592 P.2d 493; Pretty On Top v. City of Hardin (1979), 182 Mont.

51

311, 597 P.2d 58; Ambrogini v. Todd (1982), 197 Mont. 111, 642 P.2d 1013; Belue v. State (1982), 199 Mont. 451, 649 P.2d 752. The majority agrees with the rationale of this line of cases but concludes that, with the exception of cases involving intervening superseding events, foreseeability should be restricted to the "duty" analysis.

In Kitchen Krafters we applied the concept of foreseeability to the element of causation and stated that "[p]roximate cause is normally analyzed in terms of foreseeability. Simply stated, one is only liable for consequences which are considered to be reasonably foreseeable." Kitchen Krafters, 789 P.2d at 575 (citing Prosser and Keeton on Torts § 43 (5th ed. 1984). The line of cases which followed Kitchen Krafters, and which were not overruled by the majority, repeated the requirement that foreseeability be considered as part of proximate cause. See Thayer v. Hicks (1990), 243 Mont. 138, 793 P.2d 784; Kiger v. State (1990), 245 Mont. 457, 802 P.2d 1248; U.S.F.& G v. Camp (1992), 253 Mont. 64, 831 P.2d 586; King v. State (1993), 259 Mont. 393, 856 P.2d 954; Logan v. Yellowstone County (1994), 263 Mont. 218, 868 P.2d 565; Miller v. Mather (1995), 270 Mont. 188, 890 P.2d 1277.

As noted, the majority concludes it is unnecessary to address foreseeability as part of the causation element, except in cases of intervening superseding events. I disagree and submit that the concept of foreseeability has a proper and distinct place in the analysis of both "duty" and "causation" elements--both of which must be satisfied in order to establish the prima facie case for

52

negligence. See Calkins v. Cox Estates (N.M. 1990), 792 P.2d 36; McCain v. Florida Power Corp. (Fla. 1992), 593 So. 2d 500; Nelson by Tatum v. Com. Edison Co. (Ill. App. 2d 1984), 465 N.E.2d 513.

The analysis of foreseeability in the "duty" context focuses on whether or not the plaintiff was in the zone of danger to be protected from the defendant's actions. As the New Mexico Supreme Court has recently stated:

> This case raises issues of duty and proximate cause. Integral in both elements is a question of foreseeability. In determining duty, it must be determined that the injured party was a foreseeable plaintiff--that he was within the zone of danger created by respondent's actions; in other words, to whom was the duty owed?

Calkins, 792 P.2d at 38. If the plaintiff was not in the zone of danger there was no duty and therefore no negligence. The Florida Supreme Court has recently held that:

> [F]oreseeability relates to duty and proximate causation in different ways and to different ends. The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader "zone of risk" that poses a general threat of harm to others.

McCain, 593 So. 2d at 502.

Foreseeability in the "causation" context requires an analysis of whether the circumstances surrounding the actual occurrence of the plaintiff's injury were a foreseeable result of the defendant's breach. It is only after a duty and breach of that duty has been established that the "causation" element is analyzed with its distinct application of the foreseeability concept. As the Calkins Court stated:

53

In determining proximate cause, an element of foreseeability is also present--the question then is whether the injury to petitioner was a foreseeable result of respondent's breach, i.e., what manner of harm is foreseeable?

Calkins, 792 P.2d at 38. The McCain Court stated:

The proximate causation element, on the other hand, is concerned with whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred. In other words, the former [duty element] is a minimal threshold *legal* requirement for opening the courthouse doors, whereas the latter [causation element] is part of the much more specific *factual* requirement that must be proved to win the case once the courthouse doors are open. As is obvious, a defendant might be under a legal duty of care to a specific plaintiff, but still not be liable for negligence because proximate causation cannot be proven.

It might seem theoretically more appealing to confine all questions of foreseeability within either the element of duty or the element of proximate causation. However, precedent, public policy, and common sense dictate that this is not possible. Foreseeability clearly is crucial in defining the scope of general duty placed on every person to avoid negligent acts or omissions. . . .

. . . .

On the question of proximate causation, the legal concept of foreseeability also is crucial, but in a different way. In this context, foreseeability is concerned with the specific, narrow factual details of the case, not with the broader zone of risk the defendant created.

McCain, 593 So. 2d at 502-03.

Both arenas of the foreseeability analysis are independent and distinct from one another. Foreseeability applied to the "duty" element must be decided as a matter of law by the judge using established legal policy to determine whether a duty was owed to the plaintiff. On the other hand, foreseeability applied to the

54

"causation" element is a question of fact.  See Calkins, 792 P.2d at 38.

Without such a dual approach to the foreseeability analysis, the determination of whether the "causation" element is satisfied is reduced to a bare-bones question of cause-in-fact.  In removing foreseeability from the causation analysis, the majority's approach results in a situation where once duty and breach are established, a "but-for" or "substantial factor" analysis is all that remains in order to satisfy the causation element--I submit that such an inquiry will invariably be answered in the affirmative, particularly when it is obvious or conceded that a duty has been breached.

I must also address the majority's argument that Montana's statutory framework for determining liability reinforces its position.  Section 1-1-204, MCA, does include the concept of foreseeability in the "duty" element when it defines negligence as "a want of the attention to the nature or probable consequences of the act or omission that a prudent man would ordinarily give in acting in his own concerns."  However, I fail to follow the majority's logic when it states that the language of § 27-1-317, MCA, set forth below, specifically precludes the applicability of a foreseeability requirement to the issue of proximate cause.

> For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.

This statute addresses damages and the language simply means that if the injury was foreseeable it makes no difference whether the damages were also foreseeable.

Finally, I am not persuaded by the majority's position that lay jury members are confused by concepts such as foreseeability and proximate cause and therefore that they are distracted from their duty to decide cases based on their merits. I submit that such concepts are not only necessary to establish the prima facie case for negligence but are also, when accurately defined, the proper tools to enable the jury to do its job. In my view it is better to explain these concepts and define how they are to be used by the jury rather than to leave the juries' understanding of them to chance and differing definitions.

In conclusion, I would be the first to admit that the language contained in the Kitchen Krafters instruction has caused problems for judges and practitioners alike. The adequacy of the instruction needed to be addressed and revised. However, I am not convinced that in remedying the instruction it is necessary to abandon the concept of foreseeability and its dual application to the analysis of both the "duty" and "causation" elements in negligence actions.

_____
Justice

Chief Justice J. A. Turnage joins in the foregoing concurring and dissenting opinion.

_____
Chief Justice

No. 95-050

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

IDA O. BUSTA, as Personal Representative
of the Estate of Delbert F. Busta, on
behalf of the heirs of Delbert F. Busta,

Plaintiff and Respondent,

v.

COLUMBUS HOSPITAL CORPORATION,

Defendant and Appellant.

FILED

MAY 10 1996

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA


APPEAL FROM:   District Court of the Eighth Judicial District,
               In and for the County of Cascade,
               The Honorable Thomas M. McKittrick, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

            James R. Walsh and Dennis P. Clarke, Smith,
            Walsh, Clarke & Gregoire, Great Falls, Montana

        For Respondent:

            Dennis Patrick Conner, Attorney at Law,
            Great Falls, Montana


                        Submitted on Briefs:   January 17, 1996

                                 Decided:   May 10, 1996

Filed:


_____
            Clerk

Columbus Hospital offered testimony from Debra Gaspar, a registered nurse from Billings, who testified that based on her review of the records, Fitzgerald had complied with the standard of care applicable to post-surgical nurses at the time and date in question. However, the hospital offered no expert opinion regarding the reason that Delbert attempted to leave the hospital through the third floor window, nor did it offer expert testimony to the effect that the incident which caused Delbert's injuries and death was unforeseeable from the perspective of a hospital administrator or a hospital architect.

The jury's verdict and the court's orders were as previously stated. With this background, we will discuss the issues raised by the hospital on appeal.

### ISSUE 1

Did the District Court err when it admitted a photographic exhibit offered by the plaintiff which depicted the decedent, Delbert Busta, and included a tribute from his granddaughter?

During the testimony of Charles Busta, Delbert's son, a photograph of Delbert was offered as an exhibit. Attached to the photograph was a poetic tribute to Delbert by his granddaughter. The poem had apparently been submitted as part of a school project because next to it was a grade and a handwritten note which stated: "I can tell your Grandpa was very special to you!" At the time the photo was offered, the attorney for the hospital objected to its admission on the basis that "it was written by a person who is not

12

(a) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

(1) Objection. In case the ruling is one admitting evidence, a timely objection or a motion to strike appears on the record, <u>stating the specific ground of the objection</u>, if the specific ground was not apparent from the context.

(Emphasis added.)

As we stated in *Scofield v. Estate of Wood* (1984), 211 Mont. 59, 63, 683 P.2d 1300, 1302, "[a]n objection raised for the first time on appeal is not timely. Unless a timely objection to evidence or testimony is raised at the trial level, it cannot be considered on appeal." (Citations omitted.)

On appeal, the hospital contends that the photograph of Delbert should have been excluded for the reason that it included hearsay in violation of Rule 801, M.R.Evid.; for the reason that it was irrelevant pursuant to Rule 401, M.R.Evid.; and for the reason that it was unduly prejudicial in violation of Rule 403, M.R.Evid.

However, the hospital's hearsay objection was not stated at the time that the exhibit was offered and was specifically waived when the plaintiff's attorney offered to call the author and the defendant's attorney stated that it would be unnecessary. Undue prejudice in violation of Rule 403 was also specifically waived because it was not stated as a basis of the defendant's objection at the time the exhibit was offered.

Although irrelevance was not specifically stated as a basis for the defendant's objection to the plaintiff's photographic

During his life following his discharge from military service, Delbert received a small pension due to his diagnosis of simple schizophrenia. The jury was fully informed of that fact.

Subsequent to Delbert's death, his surviving spouse Ida, after learning of the basis for his disability benefits, applied for death benefits which apparently were denied. For that reason, the same attorney who represented her in this case wrote to the Department of Veterans' Affairs on July 10, 1992, and requested that the denial be reconsidered. This letter was written over two years before Dr. Richard Rada was first retained and consulted on August 22, 1994.

In his letter, the plaintiff's attorney provided copies of Delbert's records and referred to his prisoner of war experience, his subsequent medical diagnosis, and extensive summaries of his Veterans' Administration medical records since the date of his discharge. At the conclusion of the five-page letter, plaintiff's attorney expressed the opinion that based on that medical history and Delbert's apparent attempt to escape from the hospital and some perceived danger, his death was probably related to his service-connected condition, and he requested that the Department reconsider the denial of Ida's claim for benefits.

Copies of the medical records referred to in the letter were provided to the defendant and were offered as exhibits without objection. However, the defendant also sought to admit the five-page letter written by the plaintiff's attorney. When the

16

objection was stated that the letter was inadmissible pursuant to *Allers v. Willis* (1982), 197 Mont. 499, 643 P.2d 592, because it related to a collateral source, the defendant sought to admit the letter after deleting the identity of the recipient and the reference to death benefits. However, the District Court held that because the letter was on plaintiff's attorney's letterhead, the potential for prejudice from its admission outweighed its probative value and denied its admission. The court did offer to allow the defendant to produce other evidence of the letter's contents. The defendant indicated it would call Ida Busta for the purpose of offering such evidence. However, when the District Court stated that that would be acceptable, the defendant declined to do so.

On appeal, the defendant contends that its proffered letter from the plaintiff's attorney should have been admitted as an admission by the plaintiff that Delbert died as a result of his preexisting mental condition, rather than because of Columbus Hospital's negligence. It contends that because it was not informed of his preexisting mental condition at the time of his admission to the hospital, it could not reasonably have been expected to protect him from harming himself.

As stated previously, we review a district court's evidentiary ruling to determine whether there has been an abuse of discretion. *In re $23,691.00*, 52 St. Rep. at 1065, 905 P.2d at 152. Furthermore, we will uphold a district court's decision, if correct, even though its reason for that decision may have been incorrect. *Norman v. City*

17

*of Whitefish* (1993), 258 Mont. 26, 30, 852 P.2d 533, 535; *District No. 55 v. Musselshell County* (1990), 245 Mont. 525, 527, 802 P.2d 1252, 1253.

The District Court held that the letter, as modified by the defendant, was inadmissible for several reasons. It concluded that it was an offer of compromise, and therefore inadmissible pursuant to Rule 408, M.R.Evid.; that it was evidence of a collateral source; and that when altered to exclude evidence of a collateral source, it was incomplete, and therefore, that its prejudicial impact outweighed any probative value.

The defendant contends that the reasons given by the District Court for excluding its proposed exhibit lack merit and that the letter was relevant pursuant to Rule 401, M.R.Evid., because it had a tendency to make more probable the hospital's claim that Delbert died as a result of his preexisting mental infirmity.

We conclude, however, that because the author of the proposed letter had no qualification for expressing a medical opinion regarding the cause of Delbert's behavior on December 1, the letter had little probative value and that the District Court did not abuse its discretion when it refused to admit the letter pursuant to Rule 403, M.R.Evid. Rule 403 provides that:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

In *Maulding v. Hardman* (1993), 257 Mont. 18, 847 P.2d 292, we held that an attorney is not qualified to express an expert medical opinion regarding a party's condition or prognosis for recovery. We held in that case that when the opinion was offered in the form of an affidavit it should have been rejected by the district court which should have, instead, relied on expert testimony. *Maulding*, 257 Mont. at 27, 847 P.2d at 298.

Had plaintiff's attorney been called as a witness at trial to express an opinion regarding the medical explanation for Delbert's departure from the hospital through his third floor window, the District Court would necessarily have had to exclude the testimony because he was unqualified to express such an opinion in a court of law. For that reason, his unqualified opinion expressed in correspondence to the Veterans' Administration over two years prior to the receipt of contrary information from a qualified expert had no probative value to any relevant issue in this case. On the other hand, simply because the proposed exhibit was authored by the plaintiff's attorney, it presented substantial potential for confusing or misleading the jury. The defendant had an opportunity to present qualified evidence that Delbert's injuries and death were contributed to or caused by his preexisting mental condition. In fact, the District Court gave the defendant great latitude toward that end. However, the defendant presented no qualified evidence from any medical expert or any observation by any lay witness that Delbert's preexisting mental condition contributed in

19

any way to his behavior on the morning of December 1, 1991, or that the preexisting mental condition affected his behavior at any other time from the date on which he was discharged from military service until the date of his death.

For these reasons, we conclude that the District Court did not abuse its discretion when it excluded the defendant's proposed exhibit which included statements from the plaintiff's attorney regarding Delbert's mental condition on the evening of his death.

ISSUE 3

Did the District Court err when it refused to give the defendant's proposed instructions which defined proximate cause and stated the requirement that the decedent's injuries be foreseeable before causation could be established?

The hospital proposed, by its Instruction No. 20, that the District Court instruct the jury regarding the following definition of proximate cause:

> The proximate cause of an injury is that cause which, as a natural and continuous sequence, unbroken by any new and independent cause, produces the injury, and without which it would not have occurred.

The hospital's proposed instructions numbered 21 and 22 suggested the following requirements regarding foreseeability as it relates to proximate cause:

DEFENDANT'S PROPOSED INSTRUCTION NO. 21

> If you find that the Defendant Columbus Hospital was negligent, in order for its negligence to be the proximate cause of Delbert Busta's injuries and death, it must appear from the facts and circumstances surrounding the accident that the Columbus Hospital, as an ordinarily

20

prudent entity, could have reasonably foreseen that Delbert Busta's injury would be the natural and probable consequence of the hospital's actions.

DEFENDANT'S PROPOSED INSTRUCTION NO. 22

If you find the consequences of the hospital's actions were not reasonably foreseeable or were generally freakish, bizarre, or unpredictable, the actions of the hospital were not the proximate cause of decedent Busta's injuries and death.

The plaintiff proposed that the jury be instructed on the issue of causation in a format similar to the format suggested by our decision in *Kitchen Krafters, Inc. v. Eastside Bank of Montana* (1990), 242 Mont. 155, 789 P.2d 567. However, the plaintiff's proposed instruction referred to cause-in-fact as a "substantial factor." The defendant objected on that basis and plaintiff's proposed instruction on causation was withdrawn.

The District Court rejected the hospital's proposed instructions numbered 20, 21, and 22 on the basis that they did not satisfy the format required by *Kitchen Krafters*, and therefore, no instruction which defined proximate cause was submitted to the jury.

After the District Court indicated which instructions it would give and which instructions were refused, it asked whether the defendant had any objections. No objection was stated at that time to the court's failure to provide any instruction to the jury which defined proximate cause.

The jury was instructed that both parties had the burden of proving that the other was negligent and that the other party's

21

indisputably foreseeable and there was no evidence of intervening acts by third parties which would interrupt the chain of causation. Finally, the District Court noted that part of the confusion which resulted in its failure to define proximate cause was attributable to the difficulty that district courts have dealing with that issue since this Court's decision in *Kitchen Krafters* and respectfully requested that this Court better settle the requirements for instruction of juries on the subject of causation in future cases.

On appeal, the hospital contends that because the District Court referred to "proximate cause" in other instructions, it was necessary that the term be explained to the jury. The hospital further contends that because this Court included foreseeability as an element of proximate cause in *Kitchen Krafters* and because the foreseeability of Delbert's conduct on December 1, 1991, was a specific issue, it was important that the jury be specifically instructed regarding foreseeability.

In response, the plaintiff contends that the defendant waived its objection to the District Court's failure to instruct on the issue of proximate cause by its failure to bring the court's omission to its attention before the jury's verdict was returned. The plaintiff further contends that even if the District Court erred, the error was harmless because causation was established by the undisputed evidence, and therefore, as a matter of law.

A district court has discretion when it decides how to instruct a jury and we will not reverse a district court's decision

23

absent an abuse of discretion. *Cechovic v. Hardin & Assoc.* (Mont. 1995), 902 P.2d 520, 527, 52 St. Rep. 854, 860. When we review instructions to a jury to determine whether they were properly given or refused, we consider the instructions in their entirety, as well as in connection with the other instructions given and the evidence at trial. *Story v. City of Bozeman* (1993), 259 Mont. 207, 222, 856 P.2d 202, 211.

When we review a district court's refusal to give an offered instruction, the following rules apply:

> It is not reversible error for a trial court to refuse an offered instruction unless such refusal affects the substantial rights of the party proposing the instruction, thereby prejudicing him.
>
> A party is not prejudiced by a refusal of his proposed instructions where the subject matter of the instruction is not applicable to the pleadings and facts, or not supported by the evidence introduced at trial, or the subject matter is adequately covered by other instructions submitted to the jury.

*King v. Zimmerman* (1994), 266 Mont. 54, 64, 878 P.2d 895, 902 (quoting *Cottrell v. Burlington Northern R.R. Co.* (1993), 261 Mont. 296, 306, 863 P.2d 381, 387; *see also Ganz v. United States Cycling Fed'n* (Mont. 1995), 903 P.2d 212, 216, 52 St. Rep. 1030, 1033).

The law of foreseeability, as it relates to liability law in Montana, has had a tortuous history. Based on the concerns expressed by the District Court in this case and similar sentiments reflected by *amicus curiae* who have submitted briefs on this issue, we conclude that in the interest of clarifying issues involved in litigation where negligence is alleged, it is appropriate that we

24

address the role of foreseeability and the appropriate manner for instructing juries on the issue of causation.

Any discussion of foreseeability as it relates to liability law begins with the oft-cited decision of the Court of Appeals of New York in *Palsgraf v. Long Island Railroad Co.* (N.Y. 1928), 162 N.E. 99. In that case, the plaintiff was standing on a platform of the defendant's railroad when a guard attempted to assist another passenger aboard the departing train. In doing so, he dislodged a package from the passenger's hand which contained fireworks. The contents exploded when the package hit the ground. The shock from the explosion knocked down scales many feet away. The falling scales struck the plaintiff, and she was injured. On appeal from a judgment in favor of the plaintiff, Chief Justice Cardozo, writing for a four-person majority, reversed that judgment on the basis that absent a foreseeable injury to the plaintiff there was no duty and that absent a duty there was no negligence. In language that formed the basis for a number of subsequent decisions in Montana, Cardozo wrote that:

> The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension. . . . This does not mean, of course, that one who launches a destructive force is always relieved of liability, if the force, though known to be destructive, pursues an unexpected path. "It was not necessary that the defendant should have had notice of the particular method in which an accident would occur, if the possibility of an accident was clear to the ordinarily prudent eye."

*Palsgraf*, 162 N.E. at 100.

Writing in dissent, Justice Andrews disagreed that duty requires a foreseeable plaintiff, but instead contended that all persons have a duty of care to the world at large. He took the position that if foreseeability has a place as a limitation on an individual's liability for damages, it is in the context of proximate cause. He stated that:

> What we do mean by the word "proximate" is that, because of convenience, of public policy, of a rough sense of justice, the law arbitrarily declines to trace a series of events beyond a certain point. This is not logic. It is practical politics.

*Palsgraf*, 162 N.E. at 103 (Andrews, J., dissenting).

Andrews went on to state that in analyzing proximate cause,

> [t]he court must ask itself whether there was a natural and continuous sequence between cause and effect. Was the one a substantial factor in producing the other? Was there a direct connection between them, without too many intervening causes? Is the effect of cause on result not too attenuated? Is the cause likely, in the usual judgment of mankind, to produce the result? Or, by the exercise of prudent foresight, could the result be foreseen?

*Palsgraf*, 162 N.E. at 104 (Andrews, J., dissenting).

Therefore, from an early point in American jurisprudence there was disagreement among knowledgeable scholars regarding the role of foreseeability in the formulation of negligence law. The conviction, as expressed by Cardozo, was that without foreseeability there was no duty, and without duty there could be no liability. The view as expressed by Andrews was that foreseeability was an element of proximate cause and reflected the practical political judgment of whether effect of cause on result

26

was too attenuated. Neither, however, suggested that foreseeability should be considered on a redundant basis as part of both duty and proximate cause.

We have, as a Court, considered foreseeability in our discussions of proximate cause. However, originally those discussions were limited to situations where it was alleged that acts of independent third parties intervened following the defendant's act to sever the causal relationship between one person's conduct and another person's damage. *Lencioni v. Long* (1961), 139 Mont. 135, 139, 361 P.2d 455, 457.

Other than in the context of intervening acts by third parties, our early decisions clearly chose to follow the majority view from *Palsgraf*. In *Mang v. Eliasson* (1969), 153 Mont. 431, 437, 458 P.2d 777, 781, we cited *Palsgraf* with approval and held that:

> As a classic opinion states: "The risk reasonably to be perceived defines the duty to be obeyed." *Palsgraf v. Long Island R. Co.*, 248 N.Y. 339, 162 N.E. 99, 100, 59 A.L.R. 1253. That is to say, defendant owes a duty with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous, and hence negligent in the first instance.

In *Mang*, the plaintiff brought an action to recover damages for a reduced yield of alfalfa seed caused by weeds which the defendant allowed to be blown from his property to the plaintiff's property. Following a verdict for the plaintiff, the defendant argued on appeal that it had breached no legal duty to the plaintiff. This Court agreed and explained that to prove actionable negligence a party must prove "existence of a duty, the

27

breach thereof and a resulting injury." *Mang*, 153 Mont. at 435, 458 P.2d at 780. We explained the role of foreseeability, as it relates to duty, as follows:

> Foreseeability is of prime importance in establishing the element of duty, and the question of defendants' negligence, if any, must of necessity hinge on the finding of a breach of that duty. If a reasonably prudent defendant can foresee neither any danger of direct injury nor any risk from an intervening cause he is simply not negligent.
>
> If the chief element in determining whether defendant owes a duty or obligation to plaintiff is the foreseeability of the risk then that factor will be of prime concern in every case. Further, because it is inherently intertwined with foreseeability, such duty or obligation must necessarily be adjudicated only upon a case-to-case basis. Therefore, we do not now predetermine defendants' obligations in every situation by a fixed category; no immutable rule can be established to determine the extent of that obligation for every circumstance of the future. We do, however, define guidelines which will aid in the resolution of such an issue as is presented in the instant case.
>
> . . . .
>
> . . . . The obligation of defendants turns on whether:
>
>> ". . . the offending conduct foreseeably involved unreasonably great risk of harm to the interests of someone other than the actor. . . . Duty, in other words, is measured by the scope of the risk which negligent conduct foreseeably entails."
>
> . . . . And absent foreseeability, there is no duty owed by defendants to plaintiff. . . .
>
> In view of our holding that plaintiff failed to show a breach of duty owed by defendants, thus failing to establish that defendants were negligent in the first instance, he has failed to establish any claim upon which relief may be granted and accordingly, it is unnecessary to dwell on the law of causation. . . .

28

> We may assume without deciding that negligence, not at large or in the abstract but in relation to the plaintiff, would entail liability for any and all consequence however novel or extraordinary. Palsgraf v. Long Island R. Co., supra, 248 N.Y. 339, 162 N.E. at 101. However, the consequences to be followed must first be rooted in a wrong.

*Mang*, 153 Mont. at 437-39, 458 P.2d at 781-82.

In *Ekwortzel v. Parker* (1971), 156 Mont. 477, 482 P.2d 559, we declined to apply the foreseeability requirement set forth in *Mang* in a manner which would require that the specific accident which resulted be foreseen. *Ekwortzel*, 156 Mont. at 483, 482 P.2d at 563. However, we did, from the time that *Mang* was decided until our decision in *Kitchen Krafters*, consistently relate the notion of foreseeability to the requirement of duty. *See, e.g., Ford v. Rupple* (1972), 161 Mont. 56, 504 P.2d 686; *Williams v. Montana Nat'l Bank* (1975), 167 Mont. 24, 534 P.2d 1247; *Schafer v. State* (1979), 181 Mont. 102, 592 P.2d 493; *Pretty On Top v. City of Hardin* (1979), 182 Mont. 311, 597 P.2d 58; *Ambrogini v. Todd* (1982), 197 Mont. 111, 642 P.2d 1013; *Belue v. State* (1982), 199 Mont. 451, 649 P.2d 752.

In fact, our earlier decisions discuss causation in terms of cause-in-fact or the "but for" test, and discuss proximate cause only as it relates to continued liability following an intervening act. *See Ford*, 161 Mont. at 65, 504 P.2d at 691; *Williams*, 167 Mont. at 30, 534 P.2d at 1250.

In *Young v. Flathead County* (1988), 232 Mont. 274, 757 P.2d 772, we held for the first time that proof of proximate cause requires more

29

than proof of cause-in-fact or satisfaction of the "but for" test. However, once again, that discussion occurred in the context of this Court's conclusion that the chain of causation had been broken by independent intervening causes. We specifically reversed the district court because "[n]umerous interruptions in the chain of events occurred that could be considered the injury causing damage." *Young*, 232 Mont. at 283, 757 P.2d at 778. Although intervening cause was not analyzed in the typical fashion, *Young* was clearly an intervening cause case.

The first time that the word "foreseeable" ever appeared in the context of "proximate cause" in one of our opinions, other than as related to intervening causes, was in *Kitchen Krafters, Inc. v. Eastside Bank of Montana* (1990), 242 Mont. 155, 789 P.2d 567. In that case, we affirmed the two-tiered analysis of causation set forth in *Young*. We explained that the cause-in-fact requirement is normally established by the "but for" test by proving that a party's injury would not have occurred "but for" the other party's conduct. We also reaffirmed prior decisions in which we held that if two or more causes concur to bring about an event, then cause-in-fact is established by the "substantial factor" test which we had previously approved in *Rudeck v. Wright* (1985), 218 Mont. 41, 709 P.2d 621, and *Kyriss v. State* (1985), 218 Mont. 162, 707 P.2d 5. We held that when either the "but for" test or the "substantial factor" test was satisfied, a party has established that the other party's conduct

30

was the cause-in-fact of an injury. We then went on to add, however, that once cause-in-fact is proven, "proximate causation" must also be established. We held for the first time that:

> Proximate cause is normally analyzed in terms of foreseeability. Simply stated, one is only liable for consequences which are considered to be reasonably foreseeable. Prosser & Keeton at § 43. If the consequences of one's wrongful act are not reasonably foreseeable, then it follows that it was not proximately caused by that act. Using this analysis, one must look forward through the chain of causation in order to determine whether the events which occurred were foreseeable. If they were, the element of proximate cause is satisfied and liability will attach. Prosser & Keeton at § 43.

*Kitchen Krafters*, 242 Mont. at 168, 789 P.2d at 575.

Having added a requirement that foreseeability be established as part of causation in addition to the previous requirement that it be considered in determination of duty, we then went on to hold that juries must be specifically so instructed. We held that:

> In order to be properly instructed on proximate cause, the jury must be directed to look forward through the chain of causation, and to determine whether events which occurred subsequent to Eastside's wrongful act were foreseeable. A proper instruction on proximate cause should be worded as follows:
>
> In order for the defendant's negligence (failure to disclose) to be the proximate cause of the plaintiff's injury, it must appear from the facts and circumstances surrounding the accident [the nondisclosure] that the defendant as an ordinarily prudent person, could have foreseen that the plaintiff's injury would be the natural and probable consequence of the wrongful act.

*Kitchen Krafters*, 242 Mont. at 169, 789 P.2d at 575 (alteration in original).

31

We repeated the requirement from the *Kitchen Krafters* opinion that foreseeability be considered as part of proximate cause in *Thayer v. Hicks* (1990), 243 Mont. 138, 155, 793 P.2d 784, 795; *Kiger v. State* (1990), 245 Mont. 457, 460, 802 P.2d 1248, 1250; *United States Fidelity and Guaranty Co. v. Camp* (1992), 253 Mont. 64, 69, 831 P.2d 586, 589; *King v. State* (1993), 259 Mont. 393, 397, 856 P.2d 954, 956; *Logan v. Yellowstone County* (1994), 263 Mont. 218, 222, 868 P.2d 565, 567; and *Mills v. Mather* (1995), 270 Mont. 188, 197, 890 P.2d 1277, 1283. However, all of these cases, other than *Logan*, involved issues regarding the foreseeability of intervening causes. In such situations we have traditionally held that foreseeability is an issue related to causation. *See Halsey v. Uithof* (1975), 166 Mont. 319, 328, 532 P.2d 686, 690-91.

In *Sizemore v. Montana Power Company* (1990), 246 Mont. 37, 803 P.2d 629, it is interesting that we noted:

> Foreseeability can be determined in one of two ways. Some courts analyze the issue under the element of duty. These courts take the view that the scope of defendant's duty is determined by a foreseeability of any harm which may arise as a result of his negligent conduct. See e.g. *Palsgraf v. Long Island Railroad Co.* (1928), 248 N.Y. 339, 162 N.E. 99, 100. Other courts have analyzed foreseeability under the issue of proximate cause. In doing so, they have taken the view that all persons owe a duty to the world at large to act reasonably in order to prevent injury to their fellow man. *Palsgraf*, 162 N.E. at 104 (Andrews dissenting). If this duty is breached, it then becomes necessary to determine whether the consequences of the breach were reasonably foreseeable to the defendant. If the consequences were reasonably foreseeable, proximate cause is established and liability will follow.

32

*Sizemore*, 246 Mont. at 46, 803 P.2d at 635.

Since *Sizemore* involved allegations of a superseding intervening event, we analyzed foreseeability as part of proximate cause in that case. We made no mention of the fact that since *Kitchen Krafters*, Montana has two concurrent lines of authority--one which analyzes foreseeability as part of duty, and a second which considers it as part of proximate cause.

Therefore, as the law in Montana currently stands, the issue of foreseeability is considered twice in our analysis of liability for a negligent act. It is first considered as part of the analysis of duty and negligence pursuant to our decision in *Mang*, 153 Mont. 431, 458 P.2d 777. It is then considered as part of a two-pronged approach to causation pursuant to our decision in *Kitchen Krafters*, 242 Mont. 155, 789 P.2d 567.

Although we acknowledge that there are other jurisdictions which engage in such a dual analysis (*see, e.g., Calkins v. Cox Estates* (N.M. 1990), 792 P.2d 36; *McCain v. Florida Power Corp.* (Fla. 1992), 593 So. 2d 500; *Nelson by Tatum v. Commonwealth Edison Co.* (Ill. App. 2d 1984), 465 N.E.2d 513), knowledgeable writers and the better-reasoned decisions of other jurisdictions criticize such a redundant consideration of foreseeability. For example, in Modern Tort Law the authors state that:

> Much confusion has resulted from the erroneous application of the requirement of foreseeability to causation. In referring to proximate cause, many decisions have confused the element of fault and have

33

employed foreseeability, properly an element of fault but not of causation.

1 J. D. Lee and Barry A. Lindahl, Modern Tort Law § 5.01, at 153 (rev. ed. 1990).

At § 5.02 the same authors point out that:

There is, unfortunately, substantial and respectable authority that foreseeability is an element of causation. . . .

This application of foreseeability has long been the subject of criticism by courts and legal scholars. Foreseeability does not touch on the causal element. Foreseeability relates only to the element of fault.

. . . .

. . . As an early Minnesota case pointed out, "What a man may reasonably anticipate is important, and may be decisive, in determining whether an act is negligent, but is not at all decisive in determining whether that act is the proximate cause of an injury which ensues." [*Christianson v. Chicago St. P., M. & O. Ry. Co.* (Minn. 1896), 69 N.W. 640.] And the Wisconsin court has stated:

This court is definitely committed to the principle that, while foreseeability is an element to be considered by the jury in determining negligence, it has no part in the jury's decision of whether particular negligence found by it is causal. [*Strahlendorf v. Walgreen Co.* (Wis. 1962), 114 N.W.2d 823.]

Dean Prosser stated:

It is simpler, and no doubt more accurate, to state the problems in terms of "duty:" is the defendant under a legal obligation to protect the plaintiff against such unforeseeable consequences of his own negligent acts? [William L. Prosser, Law of Torts 289 (3d ed. 1964).]

And Harper and James said: "Foreseeability of damage is altogether irrelevant in determining the existence of the cause in fact relationship." [2 Harper & James, Law of Torts 1135 (1956).]

34

Professor Leon Green, a persistent critic of the foreseeability test, as it is used in connection with proximate cause, remarked, "Clearly the issue of causal relation between the defendant's conduct and the plaintiff's injury is not determined by foreseeability." [Leon Green, *The Causal Relation Issue in Negligence Law*, 60 Mich. L. Rev. 543, 549 (1962).] The element of cause becomes operative only if a duty is breached and damages result, whereupon the defendant becomes liable for the damages directly caused by his breach of duty. . . . "Causal relation is a neutral issue, blind to right and wrong." [Green, 60 Mich. L. Rev. at 549.]

. . . .

Unfortunately, however, the application of the foreseeability test to causation has had a firm hold in legal literature, and some recent cases continue to compound the error. Thus, the problem of causation, difficult as it is, has been made more complex by employing foreseeability as a test of legal cause, when foreseeability should be restricted to the issue of negligence.

1 <u>Modern Tort Law</u> § 5.02 at 159-62.

In the <u>Law of Torts</u>, the authors state that:

It is obvious that under such an analysis of the duty problem, foreseeability is distinctly a factor that puts a considerable limitation on the extent of liability, even though it should be held to play no part whatever in determining the issue of proximate cause. It is also clear that if this analysis of the duty problem is accepted, no good, but only confusion, can result from repeating the same inquiries as to foreseeability under the cause issue as were asked and answered (or should have been) under the duty issue.

4 Fowler V. Harper, et al., <u>The Law of Torts</u> § 20.5, at 139 (2d ed. 1986) (footnotes omitted).

Finally, in <u>Prosser and Keeton on Torts</u> the authors state:

Once it is established that the defendant's conduct has in fact been one of the causes of the plaintiff's injury, there remains the question whether the defendant should be legally responsible for the injury. Unlike the fact of causation, with which it is often hopelessly

confused, this is primarily a problem of law. It is sometimes said to depend on whether the conduct has been so significant and important a cause that the defendant should be legally responsible. But both significance and importance turn upon conclusions in terms of legal policy, so that they depend essentially on whether the policy of the law will extend the responsibility for the conduct to the consequences which have in fact occurred. Quite often this has been stated, and properly so, as an issue of whether the defendant is under any duty to the plaintiff, or whether the duty includes protection against such consequences. This is not a question of causation, or even a question of fact, but quite far removed from both; and the attempt to deal with it in such terms has led and can lead only to utter confusion.

The term "proximate cause" is applied by the courts to those more or less undefined considerations which limit liability even where the fact of causation is clearly established. The word "proximate" is a legacy of Lord Chancellor Bacon, who in his time committed other sins. The word means nothing more than near or immediate; and when it was first taken up by the courts it had connotations of proximity in time and space which have long since disappeared. It is an unfortunate word, which places an entirely wrong emphasis upon the factor of physical or mechanical closeness. . . .

. . . .

It is quite possible to state every question which arises in connection with "proximate cause" in the form of a single question: was the defendant under a duty to protect the plaintiff against the event which did in fact occur? . . .

. . . .

. . . "Proximate cause," in short, has been an extraordinarily changeable concept. "Having no integrated meaning of its own, its chameleon quality permits it to be substituted for any one of the elements of a negligence case when decision on that element becomes difficult. . . . No other formula . . . so nearly does the work of Aladdin's lamp." [Leon Green, *Proximate Cause in Texas Negligence Law*, 28 Tex. L. Rev. 471 (1950).]

W. Page Keeton, et al., Prosser and Keeton on Torts § 42, at 272-76

(5th ed. 1984).

Many courts have eliminated this redundant analysis and simplified the jury's responsibility by limiting the analysis of foreseeability to a determination of whether there is negligence in the first place, and then dealing with cause as simply cause-in-fact. Two of the jurisdictions in our own area which have done so are the states of Washington and Oregon. In *Rikstad v. Holmberg* (Wash. 1969), 456 P.2d 355, the Washington Supreme Court stated that:

> The better considered authorities do not regard foreseeability as the handmaiden of proximate cause. To connect them leads to too many false premises and confusing conclusions. Foreseeability is, rather, one of the elements of negligence; it is more appropriately attached to the issues of whether defendant owed plaintiff a duty, and, if so, whether the duty imposed by the risk embraces that conduct which resulted in injury to plaintiff. The hazard that brought about or assisted in bringing about the result must be among the hazards to be perceived reasonably, and with respect to which defendant's conduct was negligent. *See* Restatement (Second) of Torts § 435, comment c (1965). . . .
>
> It is the misuse of foreseeability--that is, discussion of the improbable nature of the accident in relation to proximate cause--that led the trial judge, in the instant case, to conclude that the challenge should be sustained.

*Rikstad*, 456 P.2d at 358.

The comment in the Restatement (Second) of Torts referred to in the Washington Court's opinion is part of the Restatement's analysis of foreseeability under its section on causation. The authors there state:

> Strictly, the problem before the court is one of determining whether the duty imposed on the actor was designed to protect the one harmed from the risk of harm

37

> from the hazard in question. (See § 281, comment *e*, and
> § 449.) However, courts frequently treat such problems
> as problems of causation. (See § 281, comment *e*, and
> § 430, comment *a*.)

Restatement (Second) of Torts § 435 cmt. c (1965).

Similar analyses in Oregon occurred in *Sworden v. Gross* (Or. 1966), 409 P.2d 897, and *Brennen v. City of Eugene* (Or. 1979), 591 P.2d 719.

We agree with the Washington Court and with the cited authors that the better-reasoned authorities address foreseeability as part of the analysis of "duty," rather than "proximate cause," and that to analyze it under both issues leads only to confusion which can be easily avoided.

However, the arguments quoted from the previous authors and the reasoning of the Washington Court are even more compelling based on Montana's statutory framework for determining liability. Section 1-1-204(1), MCA, defines negligence as "a want of attention to the nature or <u>probable consequences</u> of the act or omission that a prudent man would ordinarily give in acting in his own concerns." (Emphasis added.) This definition suggests that foreseeability is an element of negligence, and therefore, properly considered with the existence of a duty.

On the other hand, § 27-1-317, MCA, which discusses the damages for which a negligent actor is responsible, defines those damages as "the amount which will compensate for all the detriment proximately caused thereby, <u>whether it could have been anticipated or not</u>." (Emphasis added.) By equating damages "proximately caused

38

thereby" with actual damages, whether they "could have been anticipated or not," our statutory scheme specifically precludes the applicability of a foreseeability requirement to the issue of proximate cause.

We therefore reverse that part of our decision in *Kitchen Krafters, Inc. v. Eastside Bank of Montana* (1990), 242 Mont. 155, 789 P.2d 567, which requires a two-tiered analysis of causation which includes consideration of foreseeability in cases other than those cases where there has been an allegation that the chain of causation is severed by an independent intervening cause. There are several reasons which compel this result. First, that part of the opinion which suggests language for a proximate cause instruction erroneously requires proof of an intentional act, rather than a negligent act, when it suggests the following language:

> [I]t must appear from the facts and circumstances surrounding the accident . . . that defendant as an ordinarily prudent person, could have foreseen that plaintiff's injury would be the natural and probable consequence of the wrongful act.

*Kitchen Krafters*, 242 Mont. at 169, 789 P.2d at 575.

Second, the requirement that foreseeability be considered as part of proximate cause is redundant with the existing requirement that foreseeability be considered as part of the analysis of duty.

Third, our statutory scheme of laws relating to liability requires that foreseeability be considered as part of the negligence analysis and that it not be considered as part of proximate cause.

39

Fourth, legal concepts such as "proximate cause" and "foreseeability" are best left to arguments between attorneys for consideration by judges or justices; they are not terms which are properly submitted to a lay jury, and when submitted can only serve to confuse jurors and distract them from deciding cases based on their merits.

In those cases which do not involve issues of intervening cause, proof of causation is satisfied by proof that a party's conduct was a cause-in-fact of the damage alleged. As stated in Prosser and Keeton on Torts § 41, at 266 (5th ed. 1984), a party's conduct is a cause-in-fact of an event if "the event would not have occurred but for that conduct; conversely, the defendant's conduct is not a cause of the event, if the event would have occurred without it."

We hold that with the exception of those cases involving allegations of independent intervening cause or multiple causes, it is sufficient to instruct the jury, as recommended in 1989 by the Montana Supreme Court Commission on Civil Jury Instructions, that: "The defendant's conduct is a cause of (injury/death/damage) if it helped produce it and if the (injury/death/damage) would not have occurred without it." Montana Pattern Instruction 2.08 (rev. 11/1/89).

In those cases where chain of causation is an issue (e.g., where there is an allegation of an independent intervening cause), we recommend, as did the Commission in 1989, the following instruction:

40

The defendant's conduct is a cause of the (injury/ death/damage) if, in a natural and continuous sequence, it helped produce it and if the (injury/death/damage) would not have occurred without it.

Montana Pattern Instruction 2.08 (rev. 11/1/89).

In those cases where there are allegations that the acts of more than one person combined to produce a result (e.g., when the plaintiff alleges negligence and the defendant alleges contributory negligence, or when there are multiple defendants), we acknowledge that the recommended cause-in-fact instruction would be confusing and misleading. Therefore, in those cases, we recommend continued use of the substantial factor instruction approved in *Rudeck v. Wright* (1985), 218 Mont. 41, 709 P.2d 621, and *Kyriss v. State* (1985), 218 Mont. 162, 707 P.2d 5. We further recommend that terms such as "proximate cause" or "legal cause" and "reasonable foreseeability," which have some significance to lawyers and judges, not be allowed to confuse jurors by the inclusion of those terms in jury instructions. To the extent that foreseeability raises a jury issue, it is adequately addressed by the definition of negligence included in Montana Pattern Instruction 2.00.[1] To the extent that foreseeability raises issues of public policy, such as those about which Justice Andrews expressed concern in his dissent in *Palsgraf*, the subject is properly dealt with as an issue of law.

---

[1]Montana Pattern Instruction 2.00 (rev. 2/7/91) defines negligence as "the failure to use reasonable care. Negligence may consist of action or inaction. A person is negligent if he fails to act as an ordinarily prudent person would act under the circumstances."

41

contributed to Delbert's fall and injuries. The issue was simply whether the hospital was negligent by allowing its windows to remain in a condition which would permit a patient to either escape or fall through them. That issue was decided in Ida Busta's favor based on proper instructions to the jury and was supported by substantial and virtually uncontroverted evidence.

For these reasons, we conclude that the District Court did not err when it refused to give the defendant's proposed instructions which defined proximate cause and which stated the requirement that decedent's injuries be foreseeable before causation could be established; and that the District Court's failure to instruct the jury regarding the meaning of cause-in-fact was harmless error.

## ISSUE 4

Did the District Court err when it refused to offset benefits received by Ida Busta from the Veterans' Administration against the damages awarded for the decedent's wrongful death?

Following trial, the hospital moved the court pursuant to § 27-1-308, MCA, to deduct from the plaintiff's judgment that amount Ida Busta received from the Veterans' Administration due to her husband's death. Section 27-1-308, MCA, provides in relevant part that:

> (1) In an action arising from bodily injury or death when the total award against all defendants is in excess of $50,000 and the plaintiff will be fully compensated for his damages, exclusive of court costs and attorney fees, a plaintiff's recovery must be reduced by any amount paid or payable from a collateral source that does not have a subrogation right.

44

Section 27-1-307(1), MCA, defines "collateral source" as:

[A] payment for something that is later included in a tort award and which is made to or for the benefit of a plaintiff or is otherwise available to the plaintiff:
    (a) for medical expenses and disability payments under the federal Social Security Act, any federal, state, or local income disability act, or any other public program;
. . . .
    (e) any other source, except the assets of the plaintiff or of his immediate family if he is obligated to repay a member of his immediate family.

The District Court denied the hospital's motion for offset for the following reasons:

1. The court found that the heirs will not be fully compensated for their damages, due to the reduction of their award based on contributory fault;

2. The court found that the Veterans' Administration benefits received by Ida Busta were not medical expenses or disability payments, and therefore, not "collateral source" as defined in § 27-1-307, MCA; and

3. The court found that the general nature of the defendant's verdict form makes it impossible to determine what, if any, amounts were awarded by the jury for a loss against which the collateral source should be offset.

On appeal, the hospital contends that the death benefits that Ida Busta received were included in the definition of "collateral source" at subsection (1)(e) of § 27-1-307, MCA, by its reference to "any other source."

However, it is not necessary that we resolve whether death benefits from the Veterans' Administration are included within the statutory definition of "collateral source," or whether the plaintiff has been fully compensated where her judgment has been reduced by comparative negligence. Section 27-1-308, MCA, clearly provides for reduction of only that part of a recovery which has previously been compensated by a collateral source. In this case, Ida Busta was awarded death benefits by the Veterans' Administration for the economic loss which resulted from her husband's death. The jury, on the other hand, was instructed that its wrongful death damage award should include damages for not only financial support which the heirs lost, but also for "the value of the society, comfort, guidance, education, care, protection and companionship which Ida Busta, William Busta and Charles Busta have lost by reason of the death," and that its award should "include reasonable compensation to them [the heirs] for their grief, sorrow and mental anguish resulting from the death."

The jury returned a special verdict which awarded damages to the heirs in the amount of $800,000. There is no indication from the verdict form what, if any, amount of the verdict was for the loss of Delbert's financial support. Therefore, there was no method by which the District Court could calculate what, if any amount, the hospital was entitled to offset by the amount of previous Veterans' Administration death benefits awarded to Ida. Because there was no factual basis upon which the District Court

46

could properly grant the hospital's motion for offset, the motion was properly denied. For these reasons, we affirm the District Court's denial of the hospital's motion for statutory offset pursuant to § 27-1-308, MCA.

Based on our discussion of and holding regarding each of the issues raised, we affirm the judgment of the District Court.

_____
Justice

We concur:


_____
Chief Justice


_____


_____


_____
Justices

47

Justice Karla M. Gray, specially concurring.

I concur in the Court's opinion on issues one and two and specially concur on issues three and four.

With regard to issue three, which relates to the District Court's failure to instruct on proximate cause, I agree with the result the Court reaches on the issue and with most of its discussion of our case law and other authorities vis-a-vis foreseeability as an element of proximate cause. My one disagreement with the Court in this regard is in its interpretation of § 27-1-317, MCA. I do not read the statute as precluding the consideration of foreseeability as part of causation. Conversely, however, the statute certainly does not require us to consider foreseeability in analyzing causation. Thus, I am persuaded by the remainder of the authorities cited by the Court that we erred in doing so in <u>Kitchen Krafters</u> where no intervening cause issue required its inclusion.

With regard to issue four, whether the hospital was entitled to offset the VA benefits Ida Busta received against the wrongful death damages awarded, I concur in the Court's opinion. I specially concur only to add that the hospital prepared the Special Verdict which was submitted to the jury and which rendered it impossible for the District Court to calculate whether any offset was authorized (even assuming that the VA benefits met the statutory definition of collateral source). If the hospital wanted to assert entitlement to the offset, it was incumbent upon the hospital to structure a verdict form which would make such a calculation possible.

_____
                Justice

48

Justice Charles E. Erdmann concurring in part and dissenting in part.

I concur in the majority's opinion on Issues 1, 2, and 4, but write separately to dissent on Issue 3.

I disagree with the majority's holding that the District Court's failure to instruct on proximate cause was harmless error. I am convinced that the failure to define proximate cause for the jury was reversible error. In fact, the jury received no instructions at all which defined causation. Furthermore, I disagree with the majority's analysis of foreseeability as applied to proximate cause and therefore dissent from the majority's decision to overrule the requirement in Kitchen Krafters v. Eastside Bank of Montana (1990), 242 Mont. 155, 789 P.2d 567, that causation instructions include a discussion of foreseeability.

In Davis v. L.D.S. Church (1990), 244 Mont. 61, 796 P.2d 181, we held that it was error for the lower court to not instruct on proximate cause and stated that the question of proximate cause is an issue of fact to be decided by the jury. Davis, 796 P.2d at 186. In order to constitute reversible error, the lower court's actions must affect the substantial rights of the complaining party. Davis, 796 P.2d at 186 (citing Rollins v. Blair (1989), 235 Mont. 343, 767 P.2d 328. In Davis we concluded that the defendant was not prejudiced by the court's failure to instruct on proximate cause and therefore held the error to be harmless. Davis, 796 P.2d at 187.

However, under the circumstances of the present case, I would hold that the District Court erred in not instructing the jury on proximate cause. A number of instructions given by the District Court contained the phrase "proximate cause," but the jury was not given the benefit of any guidance from the court on this crucial concept. It is the duty of the court to instruct the jurors fully and correctly on all applicable laws. Billings Leasing Co. v. Payne (1978), 176 Mont. 217, 224, 577 P.2d 386, 390. As this Court noted in Billings Leasing Co.:

> " * * * In instructing the jurors, we must assume that they have no knowledge of the rules of law and that therefore, they must be instructed on all points of law which, under any reasonable theory, might be involved in their deliberations, to the end that their decision will be according to the law and the evidence and untinged by any private and possibly false opinion of the law that they entertain."

. . . .

Jury instructions are crucial to a jury's understanding of the case and, unfortunately, counsel cannot always be relied upon to provide those instructions. . . .

> "It is the inescapable duty of the trial judge to instruct the jurors, fully and correctly, on the applicable law of the case, and to guide, direct, and assist them toward an intelligent understanding of the legal and factual issues involved in their search for truth. *The court must instruct the jury properly on the controlling issues in the case* even though there has been no request for an instruction or the instruction requested is defective."

50

<u>Billings Leasing Co.</u>, 577 P.2d at 390-91 (quoting McBride, <u>The Art of Instructing the Jury</u> at 17 (1969), and Wright & Miller, <u>Federal Practice and Procedure, Civil</u> § 2556).

In the present case, the hospital offered an instruction on proximate cause which was refused by the District Court. The plaintiff withdrew her instructions defining causation. As a result, the jury was not instructed on the crucial concept of proximate cause which is a key element in all negligence actions. After analyzing foreseeability and proximate cause, the majority determines this to be harmless error. I differ with the majority's analysis and position on foreseeability and proximate cause and conclude that the District Court's failure to define proximate cause for the jury in this case was reversible error.

The majority claims it is redundant and confusing to jurors to focus on foreseeability when analyzing both the "duty" element and "proximate cause" element of the tort of negligence. On the contrary, I believe that such a dual analysis of foreseeability is a necessary and reasonable analysis which has, unfortunately, been complicated in Montana by the confusing wording of the <u>Kitchen Krafters</u> instruction.

In Mang v. Eliasson (1969), 153 Mont. 431, 458 P.2d 777, and its progeny, we determined that the concept of foreseeability was a part of the "duty" element. <u>See</u> Ford v. Rupple (1972), 161 Mont. 56, 504 P.2d 686; Williams v. Montana National Bank (1975), 167 Mont. 24, 534 P.2d 1247; Schafer v. State (1979), 181 Mont. 102, 592 P.2d 493; Pretty On Top v. City of Hardin (1979), 182 Mont.

51

311, 597 P.2d 58; Ambrogini v. Todd (1982), 197 Mont. 111, 642 P.2d 1013; Belue v. State (1982), 199 Mont. 451, 649 P.2d 752. The majority agrees with the rationale of this line of cases but concludes that, with the exception of cases involving intervening superseding events, foreseeability should be restricted to the "duty" analysis.

In Kitchen Krafters we applied the concept of foreseeability to the element of causation and stated that "[p]roximate cause is normally analyzed in terms of foreseeability. Simply stated, one is only liable for consequences which are considered to be reasonably foreseeable." Kitchen Krafters, 789 P.2d at 575 (citing Prosser and Keeton on Torts § 43 (5th ed. 1984). The line of cases which followed Kitchen Krafters, and which were not overruled by the majority, repeated the requirement that foreseeability be considered as part of proximate cause. See Thayer v. Hicks (1990), 243 Mont. 138, 793 P.2d 784; Kiger v. State (1990), 245 Mont. 457, 802 P.2d 1248; U.S.F.& G v. Camp (1992), 253 Mont. 64, 831 P.2d 586; King v. State (1993), 259 Mont. 393, 856 P.2d 954; Logan v. Yellowstone County (1994), 263 Mont. 218, 868 P.2d 565; Miller v. Mather (1995), 270 Mont. 188, 890 P.2d 1277.

As noted, the majority concludes it is unnecessary to address foreseeability as part of the causation element, except in cases of intervening superseding events. I disagree and submit that the concept of foreseeability has a proper and distinct place in the analysis of both "duty" and "causation" elements--both of which must be satisfied in order to establish the prima facie case for

52

negligence.  See Calkins v. Cox Estates (N.M. 1990), 792 P.2d 36; McCain v. Florida Power Corp. (Fla. 1992), 593 So. 2d 500; Nelson by Tatum v. Com. Edison Co. (Ill. App. 2d 1984), 465 N.E.2d 513.

The analysis of foreseeability in the "duty" context focuses on whether or not the plaintiff was in the zone of danger to be protected from the defendant's actions.  As the New Mexico Supreme Court has recently stated:

> This case raises issues of duty and proximate cause. Integral in both elements is a question of foreseeability.  In determining duty, it must be determined that the injured party was a foreseeable plaintiff--that he was within the zone of danger created by respondent's actions; in other words, to whom was the duty owed?

Calkins, 792 P.2d at 38.  If the plaintiff was not in the zone of danger there was no duty and therefore no negligence.  The Florida Supreme Court has recently held that:

> [F]oreseeability relates to duty and proximate causation in different ways and to different ends.  The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader "zone of risk" that poses a general threat of harm to others.

McCain, 593 So. 2d at 502.

Foreseeability in the "causation" context requires an analysis of whether the circumstances surrounding the actual occurrence of the plaintiff's injury were a foreseeable result of the defendant's breach.  It is only after a duty and breach of that duty has been established that the "causation" element is analyzed with its distinct application of the foreseeability concept.  As the Calkins Court stated:

53

In determining proximate cause, an element of foreseeability is also present--the question then is whether the injury to petitioner was a foreseeable result of respondent's breach, i.e., what manner of harm is foreseeable?

Calkins, 792 P.2d at 38. The McCain Court stated:

The proximate causation element, on the other hand, is concerned with whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred. In other words, the former [duty element] is a minimal threshold *legal* requirement for opening the courthouse doors, whereas the latter [causation element] is part of the much more specific *factual* requirement that must be proved to win the case once the courthouse doors are open. As is obvious, a defendant might be under a legal duty of care to a specific plaintiff, but still not be liable for negligence because proximate causation cannot be proven.

It might seem theoretically more appealing to confine all questions of foreseeability within either the element of duty or the element of proximate causation. However, precedent, public policy, and common sense dictate that this is not possible. Foreseeability clearly is crucial in defining the scope of general duty placed on every person to avoid negligent acts or omissions. . . .

. . . .

On the question of proximate causation, the legal concept of foreseeability also is crucial, but in a different way. In this context, foreseeability is concerned with the specific, narrow factual details of the case, not with the broader zone of risk the defendant created.

McCain, 593 So. 2d at 502-03.

Both arenas of the foreseeability analysis are independent and distinct from one another. Foreseeability applied to the "duty" element must be decided as a matter of law by the judge using established legal policy to determine whether a duty was owed to the plaintiff. On the other hand, foreseeability applied to the

"causation" element is a question of fact.  See Calkins, 792 P.2d at 38.

Without such a dual approach to the foreseeability analysis, the determination of whether the "causation" element is satisfied is reduced to a bare-bones question of cause-in-fact.  In removing foreseeability from the causation analysis, the majority's approach results in a situation where once duty and breach are established, a "but-for" or "substantial factor" analysis is all that remains in order to satisfy the causation element--I submit that such an inquiry will invariably be answered in the affirmative, particularly when it is obvious or conceded that a duty has been breached.

I must also address the majority's argument that Montana's statutory framework for determining liability reinforces its position.  Section 1-1-204, MCA, does include the concept of foreseeability in the "duty" element when it defines negligence as "a want of the attention to the nature or probable consequences of the act or omission that a prudent man would ordinarily give in acting in his own concerns."  However, I fail to follow the majority's logic when it states that the language of § 27-1-317, MCA, set forth below, specifically precludes the applicability of a foreseeability requirement to the issue of proximate cause.

> For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.

55

This statute addresses damages and the language simply means that if the injury was foreseeable it makes no difference whether the damages were also foreseeable.

Finally, I am not persuaded by the majority's position that lay jury members are confused by concepts such as foreseeability and proximate cause and therefore that they are distracted from their duty to decide cases based on their merits. I submit that such concepts are not only necessary to establish the prima facie case for negligence but are also, when accurately defined, the proper tools to enable the jury to do its job. In my view it is better to explain these concepts and define how they are to be used by the jury rather than to leave the juries' understanding of them to chance and differing definitions.

In conclusion, I would be the first to admit that the language contained in the Kitchen Krafters instruction has caused problems for judges and practitioners alike. The adequacy of the instruction needed to be addressed and revised. However, I am not convinced that in remedying the instruction it is necessary to abandon the concept of foreseeability and its dual application to the analysis of both the "duty" and "causation" elements in negligence actions.

_____
Justice

Chief Justice J. A. Turnage joins in the foregoing concurring and dissenting opinion.

_____
Chief Justice

56