JUSTICE GRAY,
concurring in part and dissenting in part.
¶38 I concur in the Court’s opinion on issue two, whether Taylor should have been sanctioned for the conduct of her attorney. I respectfully dissent, however, from that opinion on issue one, whether substantial evidence supports the jury’s damage award. I would conclude that it does and affirm.
¶39 The Court states that the only issues remaining for trial were whether the accident caused injuries to Maria and, if so, the amount of her damages. There is no longer a question of whether the accident caused injuries to Maria; the jury found it did and that determination is not appealed. In my view, however, the second issue remaining for trial was not merely the amount of Maria’s damages, as the Court states it. It was the amount of damages caused by the accident. That distinction is important to the first issue before us, namely, whether substantial evidence supports the jury’s damage award. The Court concludes it does not. I disagree.
¶40 I do agree with the Court’s statement of the controlling principles regarding this issue. If conflicting evidence exists, we do not retry a case because the jury chose to believe one party over another. At the same time, however, a jury may not disregard uncontroverted, credible, nonopinion evidence. See Brockie, 268 Mont. at 522, 887 P.2d at 169 (citations omitted). We also have held that where the only evidence supports an award of damages and the jury fails to award any damages, the verdict is not supported by substantial, credible evidence. Thompson, 284 Mont. at 446-47, 945 P.2d at 52. In Thompson, the plaintiff presented substantial evidence that she experienced pain and suffering for some months “as a result of being injured in the vehicle accident [and] [t]he City did not controvert her evidence on pain and suffering.” On that basis, we concluded there was insufficient evidence to support the jury’s award of zero dollars for pain and suffering. Thompson, 284 Mont. at 446-47, 945 P.2d at 52.
¶41 There is another important principle relating to our review of jury damage awards that the Court does not mention, but which is important in properly resolving this issue. That principle is that it is impossible and improper for a court to try to segregate or ascertain the underpinnings for a jury verdict which awards damages without breaking them into separate elements. See Busta v. Columbus Hospital Corp. (1996), 276 Mont. 342, 375, 916 P.2d 122, 142; Evans v. Tea *110 kettle Realty (1987), 226 Mont. 363, 365-66, 736 P.2d 472, 474. On the record before us here, the proper application of all of these principles regarding damage awards and the sufficiency of evidence to support them compels a conclusion that the jury’s award of damages to Maria in the amount of $17,553 is amply supported by evidence and must be upheld.
¶42 The Court starts its analysis from the implicit premises that 1) Maria documented medical expenses of $ 17,357.44; 2) her medical expense evidence was all uncontroverted insofar as the relationship between the accident and the expenses incurred; and 3) the jury necessarily accepted those amounts and then “appears” to have merely added on approximately $200 for Maria’s most recent emergency room and clinic visits in reaching its total damage award. At that point, the Court feels free to conclude that the jury awarded her nothing for pain and suffering even though she presented substantial and noncontroverted evidence about her extensive pain and suffering. A review of the record debunks the Court’s second premise, and controlling law negates the third.
¶43 Rather than trying to set forth every item of testimony which undercuts the Court’s conclusory notion that the documented medical expenses all related to injuries Maria sustained in the accident, I will present only a few examples of testimony — from Maria’s own medical witnesses — which controverted their initial testimony that all the documented expenses were accident related. Dr. Sweeney, who practiced at the Immediate Care Center, for example, testified on direct examination that the medical bill summary contained in Plaintiff’s Exhibit 9 of treatment he provided, including the physical therapy he ordered and associated treatment, all related to the accident. On cross-examination, however, he testified that on April 7, 1995 — the first time he saw Maria after the accident — her chief complaint was tightness in the chest, coughing, and hurting to breathe. He saw her again on May 5, when her main complaint and reason for coming in was an upper respiratory infection. Again on June 2, her main complaint was still the upper respiratory infection. On August 10, Dr. Sweeney saw Maria for a sore throat. In October of 1995, her primary complaint was that she was not sleeping well, and Dr. Sweeney’s opinion was that the decongestants she had been taking may have contributed to her disrupted sleep.
¶44 These visits to Dr. Sweeney clearly were not related to the accident and, therefore, the medical expenses associated with these visits *111 were not damages resulting from the accident. I would submit that the documented medical expenses regarding these visits to Dr. Sweeney clearly controvert the Court’s implicit premise that all documented medical expenses were related to the accident and its corresponding determination that the jury necessarily accepted all the medical expense evidence as relating to the accident. Therefore, since the evidence was in conflict, it is clear that the jury was not required to accept Maria’s position that all the documented medical expenses resulted from the injuries she sustained in the accident.
¶45 The testimony of physician’s assistant Lutz, who was employed at Occupational Sports Medicine Associates (Sports Medicine), is similar to that of Dr. Sweeney; that is, it did not constitute uncontroverted evidence that all the medical expenses associated with his or Sports Medicine’s treatment of Maria was related to, or resulted from, the accident. Certainly, he began by testifying that all the Sports Medicine medical bills refleqted on Plaintiff’s Exhibit 9 related to injuries Maria received in the accident. He also testified, however, that Maria presented to Hewett, another physician’s assistant, on two occasions in June of 1997, with complaints of back pain and Hewett found no muscle spasm or trigger points. The same was true of another visit to Hewett in January of 1999. Indeed, Lutz’s diagnosis of myofascial pain (back pain involving trigger points) resulting from the accident was based entirely on Maria’s statements to him — controverted throughout the record — that she did not have back problems before the accident and was healthy prior to that time. Again, the relationship between the expenses associated with the referenced visits to Hewett and the accident is controverted and the jury was not required to accept all the documented medical expenses.
¶46 Dr. Davis, Maria’s clinical psychologist, also testified initially that, to the extent his bills were reflected on Plaintiff’s Exhibit 9, all treatment related to the accident. Later, however, he testified that everything he had testified to did not necessarily result from the accident and that some of Maria’s problems preexisted that event. With regard to one visit from Maria, he observed that part of the stress he was treating her for resulted from her attorney vigorously encouraging her to become involved in job search activities. I am not convinced that lawyer-induced stress of this type, and associated treatment, truly relates to the accident or was perceived by the jury to do so.
¶47 Dr. Davis also agreed there is always a possibility that someone’s problems were in wanting to exhibit symptoms. But his later *112 testimony concerning Maria’s pain and suffering did even more to controvert the picture she and her mother presented to the jury on that subject. Dr. Davis testified that psychological factors are often judged to play a role in maintaining myofascial pain syndromes. He gave Maria a pain behavior test, explaining that much of pain behavior is learned and reinforced by environmental factors; indeed, the more pain behavior demonstrated, the more likely the pain complained of is in some degree controlled by environmental factors and reinforced from the environment. Maria’s score on the pain behavior test suggested some possibility of that in her case. Another score, from a different test, indicated a possibility of symptom exaggeration by Maria. Finally, Dr. Davis also testified that she had left, or complained of, several doctors and emergency room personnel because they did not listen to her enough, did not “hear her distress.”
¶48 Finally, Dr. Peterson, associated with Sports Medicine, initially testified that all of the care andtreatment on Plaintiff’s Exhibit 9, including that from Dr. Davis, the Clinic, and others “appear to be related to” Maria’s injuries from the accident. However, he later identified at least two occasions — one in June of 1997 and one in January of 1998 — when no muscle spasms were located. Importantly, and like Lutz, he related Maria’s painful trigger points to the accident because that was what she told him. Finally, Dr. Peterson observed that Maria quit seeing Dr. Walz because they did not hit it off after the examination he conducted could not locate anything wrong with Maria and he was unable to find any pain in the lower back area.
¶49 In short, and without even reviewing the medical testimony presented by the defendant, there is substantial conflict in the record about the relationship between some of Maria’s medical expenses and the accident at issue. Also importantly, given the Court’s discussion of her pain and suffering, there is substantially conflicting evidence about not only the actual extent of that pain overall, but its relationship to — that is, whether it was caused by — the accident. Clearly, the evidence of record required the jury to award Maria some medical expense damages; just as clearly, the conflicting evidence did not require the jury to award the total medical expense damages documented by Maria. In addition, the evidence clearly supported an award of pain and suffering damages; but, since the evidence conflicted regarding the extent of her pain and suffering and how much of it resulted from the accident, it was within the jury’s discretion how much to award for that element of damages. In this regard, the pres *113 ent case differs significantly from Thompson, where the City did not controvert the plaintiffs evidence of pain and suffering at all and, as a result, we concluded there was insufficient evidence to support the jury’s award of zero dollars for pain and suffering. See Thompson, 284 Mont. at 446-47, 945 P.2d at 52. Similarly, with regard to both medical expenses and pain and suffering, the jury here was not presented with uncontradicted, reliable evidence which it would not have been free to disregard. See Brockie, 268 Mont. at 522, 887 P.2d at 169.
¶50 There is another important difference between this case and Thompson, of course, and it relates to the form of verdict the jury was provided and returned. In Thompson, the jury was provided a verdict form with separate lines for damages for medical expenses, lost wages, pain and suffering, loss of ability to pursue occupation, loss of future wages and others. Thompson, 284 Mont. at 442, 945 P.2d at 49. It was the verdict form itself which enabled this Court to determine precisely what the jury had awarded for each element of damages and, in pertinent part, that it had awarded zero dollars for pain and suffering. Thompson, 284 Mont. at 442, 945 P.2d at 49.
¶51 In the present case, the verdict form had only one line for damages, and the total damages awarded were $17,553. It simply is not possible for this Court to determine how many separate damage elements were awarded and, indeed, the Court’s opinion in this regard is forced to admit that it “appears” that the approximately $200 more than the documented medical expenses covered Maria’s last emergency room and clinic visits, which had not been included in the documentation. From this, the Court concludes that the jury’s award was “limited to past medical expenses” and that, as a result, it was not supported by substantial evidence. Given this verdict form and this record, I submit that the Court’s conclusion is pure speculation and, further, that it is impossible for the Court to know what the awarded damages encompassed. It is error to try to ascertain the underpinnings of the total damage award. See, e.g., Busta, 276 Mont. at 375, 916 P.2d at 142; Evans, 226 Mont. at 365-66, 736 P.2d at 474.
¶52 I would conclude that the jury’s damage verdict is supported by substantial, credible evidence. Accordingly, I would affirm the District Court on this issue, as well as on the second issue, and I dissent from the Court’s failure to do so.